Walter Ray MacKINTRUSH v. STATE of Arkansas

CR 98-19 978 S.W.2d 293

Supreme Court of Arkansas
Opinion delivered October 1, 1998

*McCullough Law Firm*, by: *R.S. McCullough*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly Terry*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. ██ On December 22, 1997, the Arkansas Court of Appeals affirmed the judgment of conviction of appellant Walter MacKintrush. *MacKintrush v. State*, 60 Ark. App. 42, 959 S.W.2d 404 (1997). On February 12, 1998, this court granted MacKintrush's petition to review the court of appeals decision to address any confusion surrounding this court's decisions in the aftermath of *Batson v. Kentucky*, 476 U.S. 79

(1986). When we grant a petition of review, we review the judgment and proceedings before the trial court as if the appeal had been originally filed in this court. *Malone v. Texarkana Pub. Schs.*, 333 Ark. 343, 969 S.W.2d 644 (1998).

On December 21, 1994, MacKintrush was charged with the murder of his wife, Ogretta MacKintrush. He was convicted of second-degree murder on July 30, 1996, and sentenced to twenty years. He raises five assignments of error on appeal. We find no merit in any of the points raised, and we affirm the judgment of conviction.

## I. Batson *Procedures*

In *MacKintrush v. State, supra,* members of the court of appeals voiced multiple opinions about the soundness of this court's decisions in *Batson* cases. Three judges held that once a trial court decides that the explanations offered by the striking party are race neutral, there is no requirement for a sensitive inquiry. Two judges concurred with this result based on this court's precedent but asserted that this court's cases on the subject are in conflict or confused. One judge dissented because in his judgment a sensitive inquiry is required in every instance where a *Batson* challenge is made.

In *Batson*, a majority of the United States Supreme Court held as follows in the concluding paragraph of the decision:

> If the trial court decides that the facts establish, prima facie, purposeful discrimination and the prosecutor does not come forward with a neutral explanation for his action, our precedents require that petitioner's conviction be reversed.

*Batson*, 476 U.S. at 100 (citations omitted). The term "sensitive inquiry" is not used in the *Batson* holding though reference is made to a "sensitive inquiry" in the body of the opinion when the Court discusses purposeful discrimination and the burden of persuasion in the case of *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The Court left it up to the states to develop specific procedures for implementing *Batson*.

Initially, this court interpreted the *Batson* decision to require that the trial court undertake a "sensitive inquiry" in every instance into the direct and circumstantial evidence available to decide if the State had made an adequate explanation for the strike. *See Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987). *See also Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988). This court later modified its interpretation of *Batson* with respect to the sensitive-inquiry requirement in *Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990). In *Colbert*, we said:

> We now believe that our previous interpretations of the *Batson* holding were misdirected only to the extent that we have said that *Batson* requires a 'sensitive inquiry' by the trial court in *every* instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
>
> We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.

*Id.* at 254-255, 801 S.W.2d at 646.

This court somewhat modified its holding in *Colbert* in *Franklin v. State*, 314 Ark. 329, 863 S.W.2d 268 (1993):

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case *and* the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Id.* at 338, 863 S.W.2d at 273.

The *Franklin* holding also eliminated a trial court's obligation to conduct a sensitive inquiry every time a *Batson* objection is made and has been followed consistently by this court as well as by

the Court of Appeals since 1993. *See, e.g., Cooper v. State*, 324 Ark 135, 919 S.W.2d 205 (1996); *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996); *Heard v. State*, 322 Ark. 553, 910 S.W.2d 663 (1995); *Sims v. State*, 320 Ark. 528, 900 S.W.2d 508 (1995); *Gilland v. State*, 318 Ark. 72, 883 S.W.2d 474 (1994); *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994). However, both appellate courts, at times, have also continued to use the language from *Colbert* in their decisions as well. See, e.g., *Lammers v. State*, 330 Ark. 324, 955 S.W.2d 489 (1998); *Roseby v. State*, 329 Ark. 554, 953 S.W.2d 32 (1997); *Hugh Chalmers Chevrolet v. Lang*, 55 Ark App. 26, 928 S.W.2d 808 (1996); *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997).

 In 1995, the United States Supreme Court clarified its holding in *Batson* with its decision in *Purkett v. Elem*, 514 U.S. 765 (1995) (per curiam). In *Purkett*, the Court outlined the proper steps for a trial court to follow when a *Batson* claim is made: (1) the opponent of a peremptory challenge must make a *prima facie* case of racial discrimination; (2) the proponent of the strike must come forward with a race-neutral explanation; and (3) the trial court must decide whether the opponent has proven purposeful racial discrimination. *Purkett*, 514 U.S. at 767. The Court, in *Purkett*, expressed its concern that trial courts were combining steps two and three in the *Batson* inquiry by "requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive. . . . It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden." *Id.* at 768. This opinion leaves no doubt that a trial court must proceed to the third step of the *Batson* analysis, when a *prima facie* case is made and a racially neutral response is given, and then determine whether the opponent of the strike has proven intentional racial discrimination. At no point in the *Purkett* decision is the term "sensitive inquiry" used.

 In light of the *Purkett* decision, we have reassessed the proper procedures for the trial courts to follow in *Batson* cases and take this opportunity to set forth those procedures. Manifestly, there is a three-step process that must be used when the opponent of the strike makes a *prima facie* case. Furthermore, it is clear that

the burden of persuasion establishing purposeful discrimination never leaves the opponent of the strike. And, finally, the *Batson* process must occur outside of the hearing of the *venire*.

*Step One*. Prima facie *case*.

■ The strike's opponent must present facts, at this initial step, to raise an inference of purposeful discrimination. According to the *Batson* decision, that is done by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race.[1] In deciding whether a *prima facie* case has been made, the trial court should consider all relevant circumstances. Should the trial court determine that a *prima facie* case has been made, the inquiry proceeds to Step Two. However, if the determination by the trial court is to the contrary, that ends the inquiry.

*Step Two. Racially neutral explanation*.

■ Assuming the strike's opponent has made a *prima facie* case, the burden of producing a racially neutral explanation shifts to the proponent of the strike. (But, again, the burden of persuading the trial court that a *Batson* violation of purposeful discrimination has occurred never leaves the strike's opponent.) This explanation, according to *Batson*, must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge. Under *Purkett*, this explanation need not be persuasive or even plausible. Indeed, it may be silly or superstitious. The reason will be deemed race neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." *Purkett*, 514 U.S. at 768.

---

[1] *Batson* principles have been extended to purposeful discrimination based on gender. *See J.E.B. v. Alabama*, 511 U.S. 127 (1994). Moreover, we recognize that since *Batson*, the Court has held that the opponent of the strike need not share the same race with the struck juror to mount a *Batson* objection premised on wrongful discrimination. *See Powers v. Ohio*, 499 U.S. 400 (1991).

But, according to *Purkett*, a trial court must not end the *Batson* inquiry at this stage, and, indeed, it is error to do so.

*Step Three. Trial court decision on purposeful discrimination.*

■ If a race-neutral explanation is given, the trial court must then decide whether the strike's opponent has proven purposeful discrimination. *Purkett v. Elem, supra.* Though the United States Supreme Court has not elucidated precisely what is required at this step, clearly the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. This may be in the form of mere argument or other proof that is relevant to the inquiry. But it is crucial that the trial court weigh and assess what has been presented to it to decide whether in light of all the circumstances, the proponent's explanation is or is not pretextual. If the strike's opponent chooses to present no additional argument or proof but simply to rely on the *prima facie* case presented, then the trial court has no alternative but to make its decision based on what has been presented to it, including an assessment of credibility. We emphasize that following step two, it is incumbent upon the strike's opponent to present additional evidence or argument, if the matter is to proceed further.

■ On the point of whether a sensitive inquiry is required in every instance when a *Batson* objection is made, we must confess to some confusion over what the term means in the *Batson* context. Does it refer to the entire three-step procedure or merely to an inquiry that takes place at the third stage? And to what extent is the trial court, on its own, required to direct a further inquiry into the matter? Again, the term "sensitive inquiry" is not used by the majority in *Purkett*. Justice Stevens, in his dissent in *Purkett*, said: "A trial court must accept that neutral explanation unless a separate 'step three' inquiry leads to the conclusion that the peremptory challenge was racially motivated." *Purkett*, 514 U.S. at 775 (Stevens, J. dissenting). This suggests a separate inquiry. Nevertheless, we conclude that it is still the responsibility of the strike's opponent to move the matter forward at this stage to meet the burden of persuasion, not the trial court. The trial court can only inquire into evidence as may be available. *See Batson v.*

*Kentucky, supra, Arlington Heights v. Metropolitan Housing Development Corp., supra.* If the strike's opponent does not present more evidence, no additional inquiry by the trial court is required. However, if the strike's opponent presents additional relevant evidence and circumstances to the trial court for its consideration, then the trial court must consider what has been presented, make whatever inquiry is warranted, and reach a conclusion.

We turn then to the facts of the case before us. During *voir dire,* the prosecutor exercised three of her peremptory strikes, striking first a black male, then a white female and, next another black male. After the third strike, MacKintrush, who is African-American, objected that the strike violated *Batson* dictates. The trial court excused the jury and allowed both parties to state their positions.

Defense counsel argued initially that the prosecutor had used fifty percent of her strikes against minorities and that the third male, Mr. Stephen Orji, had given no response which indicated that he would not be a proper juror. The prosecutor responded by noting that there were already two black females seated on the jury and that MacKintrush had not made a *prima facie* case of discrimination. The prosecutor went on to explain her reasons for striking the black jurors. She contended that she struck Mr. Orji because he was nonresponsive and not frank during questioning and further because a prosecutor in another case had struck Mr. Orji from a jury panel for giving inappropriate answers about sitting in judgment on a person and on the issue of self-defense. Defense counsel responded that these reasons were not satisfactory under *Batson* and that the prosecutor never gave Mr. Orji a chance to answer questions in this selection process on the point of sitting in judgment or self defense.

The trial court listened to both sides and then made its ruling:

> Counsel, in looking at it and for the purposes of the record, at this time, without those two jurors that were just struck by the State, we would have nine jurors selected. Of those, two are apparently of African descent. That would be Mr. Mooney and Mrs. Versie. The State at this time having exercised three of six

pre-emptory (sic) challenges, one of those being against Mrs. Ahne, who is Caucasian. And one against Mr. Orji, who is of African descent and Mr. West, who is African descent. Noting that there is still another African-American to be called as a possible juror remaining in the panel, and noting the State's response, which is a racially neutral reason, I'm going to deny your motion at this time, counsel. We, of course, keep these in mind during the rest of the jury selection.

On appeal, MacKintrush argues that the reasons offered by the prosecutor for using a peremptory strike were lukewarm and seemingly benign reasons that could always be used, if permitted, in almost any case to discriminate. We note, however, that defense counsel argued against the genuineness of the prosecutor's race-neutral explanation but presented no additional relevant proof to vitiate the strike. It was defense counsel's obligation to do so, if he wanted the matter to proceed further. The trial court, in its assessment of the circumstances presented to it, found no discriminatory intent but rather that the explanation given was race neutral and that two African-Americans were already seated on the jury and a third African-American remained as part of the *venire*.

█ █ We affirm the trial court's decision in this regard. To the extent that our previous decisions regarding *Batson* procedures and a required sensitive inquiry are inconsistent with this opinion, we overrule them.

## II. Failure to Provide Witness Information

MacKintrush has been tried twice on this murder charge. The first trial ended in a mistrial when the jury deadlocked. A second trial was continued, when a witness failed to appear. A third trial was held on July 30, 1996. Before MacKintrush's first trial, he filed a motion for discovery under Rule 17.1 of the Arkansas Rules of Criminal Procedure. The prosecutor responded by allowing inspection of the case file under the office's "open file" policy.

During the trial which is at issue in this appeal, the prosecutor called Cynthia Marks to the stand. Defense counsel objected

and argued that the prosecutor had not disclosed her as a witness. The prosecutor responded that defense counsel had been told about this witness before this trial as well as prior to the previous trial, where she had been introduced to the jury but had not testified.

The following day, the trial court held a hearing on the objection to Cynthia Marks's being called as a witness. The prosecutor admitted that Ms. Marks's name had not been in the original file made available to defense counsel, but it had been on a witness list provided to defense counsel. Further, the prosecutor offered to the trial court that it was office policy to call defense counsel any time a new witness was added. Defense counsel countered that the prosecutor had not called him about Ms. Marks and that her name had not been on any list supplied to him.

The prosecutor then produced a copy of a fax to defense counsel dated June 18, 1995, summarizing Ms. Marks's statement. The trial court asked defense counsel if he had reviewed the prosecutor's file after June 19, 1995. Defense counsel responded that his investigator reviewed the file after that date, but that the information about Ms. Marks was added at a later date, and that, in any event, it would be too much of a burden for defense counsel to go through the prosecutor's file repeatedly to look for new information. The trial court ruled that it would allow Ms. Marks to testify, because it found that the information about her testimony was in the file on June 19, 1995. Despite the ruling, the prosecutor withdrew Ms. Marks as a witness, and she did not testify at trial.

██ ██ The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. *Moore v. State*, 323 Ark. 529, 915 S.W.2d 284 (1996). When there has been a failure to comply with discovery procedures, a trial court is not required to suppress evidence unless prejudice will result. *Id.* at 542-543, 915 S.W.2d at 292. Here, the trial court ruled that the State had complied with discovery procedures and that MacKintrush did have prior knowledge of this witness. Also, the State did not call her. It is difficult for us to see

how any prejudice resulted under these circumstances, and we affirm the trial court's ruling.

Defense counsel also objected to the prosecutor's calling Jewel Williams as a witness for the same reasons he objected to Cynthia Marks. The prosecutor responded by producing a fax cover sheet and a copy of Ms. William's statement that had been faxed to defense counsel on March 5, 1996. Ms. William's statement included information that on a Friday before her death, Ogretta MacKintrush came to work with marks inside her mouth, a cut lip, and scratch marks. Defense counsel argued that this information was exculpatory since the jury could infer that someone else, perhaps a boyfriend of Mrs. MacKintrush's, had committed the crime. The trial court found that defense counsel had gotten the statement before trial and denied the multiple motions for a mistrial, dismissal of the charges, and continuance.

 Under Rule 17.1 of the Arkansas Rules of Criminal Procedure, the State is required to disclose to the defense any material or information within its knowledge, possession, or control which tends to negate the guilt of the defendant. Failure, however, to disclose such evidence will not warrant reversal absent a showing of prejudice. *Smith v. State*, 326 Ark. 520, 932 S.W.2d 753 (1996). Also, "[w]hen the State fails to provide the information, the burden then falls on the appellant to show that the omission was sufficient to undermine confidence in the outcome of the trial. Furthermore, we have not deemed a failure of the State to provide information to be prejudicial when the defendant already had access to it." *Id.* at 523, 932 S.W.2d at 754.

 Here, the trial court weighed the circumstances and information before it and found that defense counsel did have the information before the trial. We are not convinced that this finding of fact was clearly erroneous so as to warrant reversal.

### III. Mandamus Against the Sheriff

Prior to trial, defense counsel requested that the Pulaski County Sheriff's office serve a subpoena on one of his witnesses. The witness lived in Garland County, and the Pulaski County Sheriff's Office, citing a lack of jurisdiction, refused to serve the

subpoena. Defense counsel next filed a writ of mandamus, praying that the court order the sheriff's office to serve the subpoena. The trial court dismissed the petition for mandamus.

■ Pursuant to Ark. Code Ann. § 16-43-208 (Repl. 1994), a circuit clerk has a duty to issue subpoenas for witnesses upon the request of either party. The statute is silent, however, about the duty of the sheriff to serve those subpoenas once they have been issued. From the facts before us, it does not appear that MacKintrush ever established a legal right which the court would be required to enforce. We note that service of the subpoena could have been accomplished by mail, by the Garland County Sheriff, or by one authorized to serve process in Garland County. Our standard of review for denial of a writ of mandamus is abuse of discretion by the trial court, and we hold that there was no abuse in this case. *See Hicks v. Gravett*, 312 Ark. 407, 849 S.W.2d 946 (1993).

### IV. Medical Examiner's Opinion

The prosecutor called Dr. Charles Kokes, the medical examiner who performed the autopsy on the victim, to testify. The trial court as well as defense counsel accepted him as an expert in the field of forensic pathology. During Dr. Kokes's testimony, defense counsel made a motion *in limine* requesting that the witness be barred from testifying that Ogretta MacKintrush's death was caused by strangulation. Defense counsel argued that while the witness could testify that the manner of death was asphyxiation, he should not be allowed to testify about the ultimate cause of death, because he was not an expert in reconstruction. The trial court allowed the testimony but instructed the prosecutor to keep it within the bounds of the witness's field of expertise. The trial court also allowed Dr. Kokes to testify about cause of death.

■ Under Rule 702 of the Arkansas Rules of Evidence, a witness qualified as an expert may give his or her opinion based on scientific, technical, or other specialized knowledge to assist the trier of fact to understand the evidence or to determine a fact in issue. Here, Dr. Kokes based his opinion on his observation of the presence of petechial hemorrhages on the surfaces of the eyes and

in the surfaces of the eyelids and the presence of hemorrhages in the criciod thyroid muscle and behind both horns of the thyroid. He went on to state that these particular types of hemorrhages are caused by pressure that is applied from outside the neck. He also stated that some of the external injuries were indicative of a struggle. Finally, he testified that in his opinion the cause of Ogretta MacKintrush's death was strangulation.

 This type of testimony was clearly proper under Rule 702, and the trial court did not abuse its discretion in allowing it. *See Suggs v. State,* 322 Ark. 40, 907 S.W.2d 124 (1995). There was no reversible error on this point.

## V. Racially Disproportionate Panel

During jury selection, MacKintrush moved for a mistrial on the basis that the jury panel was racially out of kilter in that it did not reflect the racial make-up of Pulaski County. He noted, for example, that out of thirty-two possible jurors called, only five were African-Americans. In support of his argument, he observed that while statistics show Pulaski County has a population of about twenty-three percent African-Americans, only fifteen percent of the jury panel called in this case was African-American.

 Under Ark. Code Ann. § 16-32-103 (Repl. 1994), the jury *venire* is chosen at random by computer selection from voter registration lists. This court has frequently upheld this process and has stated that it guarantees that there can be no purposeful exclusion of African-Americans. *See, e.g., Lee v. State,* 327 Ark. 692, 942 S.W.2d 231 (1997). We have also noted that "[w]hile it is clear that juror selection may not be the result of discrimination against groups defined by race, color, creed, or sex, the Supreme Court has made it equally clear that this does not mean that each jury must have on it persons representative of each distinctive group in the population from which it is chosen." *Mitchell v. State,* 299 Ark. 566, 568, 776 S.W.2d 332, 333 (1989).

We find no merit to this argument.

Affirmed.

CORBIN, J., not participating.