Maurice LONDON *v.* STATE of Arkansas

CR 02-970                                              125 S.W.3d 813

Supreme Court of Arkansas
Opinion delivered October 9, 2003

314

*William R. Simpson, Jr.*, Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

W. H. "DUB" ARNOLD, Chief Justice. Appellant Maurice London appeals his conviction of robbery from the Pulaski County Circuit Court. Following conviction, the jury imposed a sentence of twelve years to be served in the Arkansas Department of Correction. The sole issue before us is whether the trial court committed reversible error in handling appellant's *Batson* objection. *Batson v. Kentucky*, 476 U.S. 79 (1986). We find no reversible error and affirm.

Jerry Rush testified at trial that on August 3, 2001, as he walked outside of his home, appellant put a gun to Rush's head and demanded money from him. Rush stated that he initially struggled with appellant, but then Rush told appellant he would go inside his home to retrieve the money. At that point, according to Rush, appellant left the premises and was gone for about five minutes. Meanwhile, Rush obtained $400 from inside his home. When appellant returned to Mr. Rush's home, Rush threw the money out the door.

Maurine Rush, Jerry Rush's wife, testified at trial that she was inside their home with her grandson when the incident began. Mrs. Rush stated she saw appellant holding a gun pointed at her husband; and, at that time she called 911. However, once officers arrived, Mrs. Rush refused to give a statement to the officer because she testified that, at the time, she was angry with her husband for giving appellant money. Pulaski County Sheriff Deputy Joseph Dunn testified that he took a statement from Mr. Rush, but that Mrs. Rush refused to speak with him about the incident

On October 18, 2001, the State filed a one-count felony information against appellant for the aggravated robbery of Jerry Rush. The information also alleged that appellant was a habitual offender. On June 10, 2002, appellant stood trial in Pulaski County Circuit Court, Second Division, where the State presented three witnesses: Mr. Rush, Mrs. Rush, and Deputy Joseph Dunn. The defense presented no testimony.

After closing arguments, the trial court submitted the case to the jury. The jury returned with a verdict of guilty on the lesser-included offense of robbery instead of aggravated robbery. After the sentencing phase, the jury recommended a sentence of twelve years to be served in the Arkansas Department of Correction. The trial court accepted that recommendation and sentenced him accordingly.

In this appeal, appellant argues that the trial court committed reversible error in handling appellant's *Batson* objection. Namely appellant contends that the trial court did not follow this court's *Batson* framework established in *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998); and, in the alternative, a portion of the *MacKintrush* framework was unconstitutionally interpreted and applied by the trial court.

During *voir dire*, appellant objected on *Batson* grounds after the State struck from the jury panel three African–Americans whom were potential jurors. The State struck four prospective jurors in the first round of strikes, two of which were apparently African–Americans. During the second round of strikes, the State struck an African–American, resulting in three African–Americans being struck from the jury panel. At that time, appellant objected on *Batson* grounds. The following dialogue then occurred at the bench:

> DEFENSE COUNSEL: I guess for the record, we're going to make a challenge at this time. The State has now struck five people, three of which have been African–American. The Defendant is African–American. I think the State may be using this to racially bias the jury panel this morning.

> DEPUTY PROSECUTING ATTORNEY: Well, we've also struck, we've also struck two, two white people in the first round. We also say three African–Americans, Your Honor. Regarding the last juror that was struck, I believe, there was a lot of tension and attitude between he and myself during the voir dire, and that was the sole reason for the, that strike.

> DEFENSE COUNSEL: .And I believe the burden is also on them to show that their other previous strikes were not racially motivated also.

> THE COURT: Well, there are still three blacks on the jury.

> DEFENSE COUNSEL: The problem with that, Your Honor, is that they're systematically excusing three others who were, and now, obviously, the pound [sic] was heavily weighted toward the white. And by doing this, sixty percent of their strikes towards the blacks, solely, they have now shifted that balance even more.

> DEPUTY PROSECUTING ATTORNEY: Your Honor, there's no pattern. Defense has to show a pattern of systematic discrimination, there's no pattern to this.

> DEFENSE COUNSEL: think sixty percent, when you get above.

THE COURT: Well, your, there's still three on the panel, so I just don't think it's a systematic pattern at this point.

DEPUTY PROSECUTING ATTORNEY: And, Your Honor, — also indicated she had a child that was prosecuted.

THE COURT: Well, I don't think, I just don't think, I'm going to deny the motion. One had a child that had been prosecuted, I think that's a good reason. The other two, I don't recall.

DEPUTY PROSECUTING ATTORNEY [sic]: And, Your Honor, juror number three also indicated that she had a child that had been prosecuted. She was left on there.

THE COURT: I'm going to deny the motion.

Appellant argues that the prosecutor and the trial court failed to follow this court's standard as set forth in *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998), wherein we outlined a three-step approach to be used in *Batson* situations. In 1986, the United States Supreme Court held that the equal-protection clause of the Fourteenth Amendment to the United States Constitution prohibits the State from striking a *venire* person as a result of racially discriminatory intent. *Batson v. Kentucky,* 476 U.S. 79 (1986). The Court left it up to the states to develop specific procedures for implementing *Batson. Batson, supra; MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998).

■ The Supreme Court did not formulate set standards for state trial courts to follow in implementing *Batson*; however, it did provide a three-step process as guidance. In 1995, the United States Supreme Court clarified its holding in *Batson* with its decision in *Purkett v. Elem,* 514 U.S. 765 (1995) (per curiam). In *Purkett,* the Court outlined the proper steps for a trial court to follow when a *Batson* claim is made:

1. The defendant must make a prima facie showing of discriminatory intent in making a peremptory strike;

2. If a prima facie case is made, then the State must produce a race-neutral reason for the strike; and,

3.  The trial court must then make a determination as to whether the defendant has carried his burden of persuasion that the strike was fueled by racially discriminatory intent.

*Purkett*, 514 U.S. at 767.

■ Relying on the guidance found in *Batson* and subsequent federal case law, this court has formulated a specific procedure for the trial courts of Arkansas to follow. In *MacKintrush v. State*, this court established what is currently this state's three-step *Batson* procedure. First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a *prima facie* case of racial discrimination. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). Second, once the strike's opponent has made a prima facie case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. *Id.* If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. *Id.*

■ This court will reverse a trial court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). Also, we accord some measure of deference to the trial court in that it is in a superior position to make these determinations because it has the opportunity to observe the parties and determine their credibility. *Id.*

In the present case, London objected in *voir dire* on *Batson* grounds after the State struck three African–American members of the *venire* panel, asserting that the State was attempting to obtain a racially-biased jury. London argues that the trial court erred in failing to find a *Batson* violation. More specifically, London argues that the trial court erred in failing to follow the three steps required in an analysis of a *Batson* violation when the trial court considered the race-neutral explanations offered by the State.

■■ Step one is making a *prima facie* case. *MacKintrush, supra; Purkett, supra*. However, the trial court first went to step two and allowed the State to offer race-neutral explanations and then decided that there was no *Batson* violation. In other words, the trial court ignored step one, heard argument on step two, and then decided the ultimate issue under step three. Once the party-

striking jurors offered a race-neutral explanation, and the trial court rules on the ultimate issue of intentional discrimination, the preliminary issue of a *prima facie* case becomes moot. *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996).

██ Therefore, we need not analyze step one because the issue is moot. We must then determine whether the explanations offered were race-neutral and whether the trial erred in deciding that there was no *Batson* violation. In this regard, London argues that it was error for the trial court to allow the State to proffer only two race-neutral explanations when three African-Americans were struck from the panel. We will not consider this argument, however, as it was raised for the first time on appeal. Our law is well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered because the trial court never had an opportunity to rule on them. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001); *J.C.S. v. State*, 336 Ark. 364, 985 S.W.2d 312 (1999). As such, London's argument is not preserved for our review because he never objected to the State's proffer of only two race-neutral explanations.

██ Turning now to the race-neutral reasons given below, the State argued that one juror was excused because of tension and attitude and a second because she had a child that had been prosecuted. The State's explanation must be more than a mere denial of racial discrimination, but need not be persuasive or even plausible, and, indeed, may even be silly or superstitious. *Hinkston, supra*. The explanations offered by the State are not mere denials of racial discrimination and meet the requirement of step two, which means the trial court then should have determined whether the strike opponent carried the burden of persuasion that the strikes were fueled by discriminatory intent. *Purkett, supra*.

██ Although proceeding to step three, the trial court nonetheless stated that no "systematic pattern" was found, and then after some continued argument by counsel, denied London's *Batson* motion. Thus, the trial court relied on a pattern of jury strikes in deciding the ultimate issue of discriminatory intent under step three. London had alleged a pattern in his objection when he asserted a *Batson* violation where the State struck five jurors, and three of those jurors were African-American. He alleged this showed that there was a racially discriminatory intent. Reliance on

numbers alone is not sufficient to prove a discriminatory intent. The United States Supreme Court in *Batson,* stated, "[f]or example, a pattern of strikes against black jurors included in the particular venire might give rise to an inference of discrimination." *Batson,* 476 U.S. at 97. A pattern certainly may provide facts showing a discriminatory intent if the pattern in fact shows a discriminatory intent. However, whatever facts are presented, they must give rise to an inference of purposeful discrimination. *Hinkston, supra.*

Hence, mere pattern or process alone is not sufficient to establish a showing of a *Batson* violation unless the pattern shows a discriminatory intent. Here, London did no more than point to the number of African-American jurors struck from the *venire* panel. Therefore, London has failed to show the trial court erred in denying his *Batson* motion.

Finally, we note that London takes issue with this court's holding in *MacKintrush.* Specifically, appellant contends that *MacKintrush* has been misinterpreted to require the showing of a pattern of discrimination when raising a *Batson* challenge. However, again, we decline to address this issue. In arguing the *Batson* challenge below, appellant failed to object to the trial court's analysis on the basis of pattern, nor did London argue that he was not required to show a patten of discrimination. It is well settled that an argument not raised below will not be considered for the first time on appeal. *Camargo, supra; J.C.S., supra.*

Affirmed.

BROWN and THORNTON, JJ., not participating.