Robert Lee OWENS *v.* STATE of Arkansas

CR 05-279                               214 S.W.3d 849

Supreme Court of Arkansas
Opinion delivered October 6, 2005

*William R. Simpson, Jr.*, Public Defender, *Sharon Kiel*, Deputy Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Robert Lee Owens appeals from his conviction for aggravated robbery, bat-

tery in the first degree, and misdemeanor theft of property. He was sentenced to life imprisonment for the aggravated robbery conviction and forty years on the battery conviction, with the sentences to be served consecutively, and one year in jail on the misdemeanor theft conviction, to be served concurrently. On appeal to this court, he asserts two points: (1) the circuit court erred in denying his *Batson* motion during *voir dire*; and (2) the circuit court erred in ruling that still photographs taken from the E-Z Mart's surveillance camera had been properly authenticated. We affirm the judgment of conviction.

The salient facts are these. During the evening of November 15, 2003, a man (hereinafter "the robber") entered the E-Z Mart at Broadway and 16th Streets in Little Rock, went to the cold drink cooler, approached the sales counter with a can of Coca-Cola in his hand, and asked for a pack of cigarettes from Paul Aku, an employee of E-Z Mart. Aku testified that he reached for the cigarettes, and when he turned back around, the robber was holding a gun and demanded that he open the cash register. Before Aku could open the register, the robber shot at him, and the bullet hit his belt, leaving a scar on his hip.

The robber again told Aku to open the cash register. Aku attempted to enter the code to open the register, and when he opened it, the robber took all the money and proceeded to leave the store. Aku stared at the robber as he was leaving, which apparently angered the robber, and he shot Aku in the head on his way out the door. Aku was able to call the Little Rock Police Department and report the robbery. Aku subsequently identified Owens as the perpetrator of the crime from a photo spread, and Owens was arrested and charged.

## I. *Batson* Motion

During *voir dire*, the prosecutor used five of its six preemptory challenges to strike black males from the jury panel. Owens asserts that the prosecutor then failed to give a race-neutral reason for striking one of the six, *venire* member Bobby Carey. The prosecutor's announced reason for striking Carey was that the prosecutor believed Carey had stated he would have a difficult time convicting a defendant based on the testimony of only one witness. Owens contends that Carey never made that assertion. Thus, he contends that because the prosecutor's reason for striking Carey was based on something that Carey did not say, his reason for striking this juror was not race neutral.

This court has previously stated our standard of review for *Batson* challenges: "This court will reverse a circuit court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. We further accord some measure of deference to the circuit court, because it is in a superior position to make determinations of juror credibility." *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005) (internal citations omitted).

In *MacKintrush v. State*, we explained the history behind *Batson* and took the opportunity to clarify and set forth this state's procedures for implementing *Batson*. 334 Ark. 390, 978 S.W.2d 293 (1998). We defined the three-step process as follows:

*Step One. Prima facie case.*

The strike's opponent must present facts, at this initial step, to raise an inference of purposeful discrimination. According to the *Batson* decision, that is done by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race. In deciding whether a *prima facie* case has been made, the trial court should consider all relevant circumstances. Should the trial court determine that a *prima facie* case has been made, the inquiry proceeds to Step Two. However, if the determination by the trial court is to the contrary, that ends the inquiry.

*Step Two. Racially neutral explanation.*

Assuming the strike's opponent has made a *prima facie* case, the burden of producing a racially neutral explanation shifts to the proponent of the strike. (But, again, the burden of persuading the trial court that a *Batson* violation of purposeful discrimination has occurred never leaves the strike's opponent.) This explanation, according to *Batson,* must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge. Under *Purkett [v. Elem,* 514 U.S. 765 (1995) *(per curiam)*], this explanation need not be persuasive or even plausible. Indeed, it may be silly or superstitious. The reason will be deemed race neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." *Purkett,* 514 U.S. at 768, 115 S.Ct. 1769. But, according to *Purkett,* a trial court must not end the *Batson* inquiry at this stage, and, indeed, it is error to do so.

*Step Three. Trial court decision on purposeful discrimination.*

If a race-neutral explanation is given, the trial court must then decide whether the strike's opponent has proven purposeful discrimination. *Purkett v. Elem, supra.* Though the United States Supreme Court has not elucidated precisely what is required at this step, clearly the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. This may be in the form of mere argument or other proof that is relevant to the inquiry. But it is crucial that the trial court weigh and assess what has been presented to it to decide whether in light of all the circumstances, the proponent's explanation is or is not pretextual. If the strike's opponent chooses to present no additional argument or proof but simply to rely on the *prima facie* case presented, then the trial court has no alternative but to make its decision based on what has been presented to it, including an assessment of credibility. We emphasize that following step two, it is incumbent upon the strike's opponent to present additional evidence or argument, if the matter is to proceed further.

*MacKintrush*, 334 Ark. at 398-99, 978 S.W.2d at 296-97. This court further concluded that it is the responsibility of the party opposing the strike to move the matter forward at the third stage of the process and to meet the burden of persuasion. *Id.* at 399, 978 S.W.2d at 297. This is not the trial court's responsibility, as the trial court can only inquire into the evidence that is made available to it. *Id.* According to this court, if the party opposing the strike does not present more evidence, no additional inquiry by the trial court is required. *Id.* at 400, 978 S.W.2d at 297.

We first examine whether a *prima facie* case was made to raise an inference of purposeful discrimination, which is step one. We conclude that by using five of its six peremptory challenges on black males, at least an inference of discrimination was raised. We are mindful of the State's claim that Pulaski County has a high percentage of African-Americans in its population and that the jury ultimately had black members. Still, we conclude that at least an inference of discrimination was raised by the five strikes. Accordingly, we proceed to step two.

After this first step, the burden shifts to the proponent of the strike (the prosecutor) to produce a racially neutral explanation for it. Owens maintains that prospective juror Carey never

said he could not convict based on one witness, as the State contended to the circuit judge. Our problem with Owens's argument on appeal is we do not see in the trial record where Owens made the argument to the circuit judge that the prosecutor erred in stating that Carey had said he could not convict based on one witness. *Batson* arguments not made to the circuit judge are not preserved for our review on appeal. *See London v. State*, 354 Ark. 313, 125 S.W.3d 813 (2003). Accordingly, we will not address it. As a result, the prosecutor's race-neutral reason for striking Carey stands. But this does not end the inquiry.

The third, and final, inquiry for a *Batson* challenge requires the circuit judge to determine whether the strike's opponent has proven purposeful discrimination. For this point, the strike's opponent, Owens, must persuade the circuit court that the motive of the striking party is not genuine but, rather, is the product of discriminatory intent. As this court has explained, "it is crucial that the trial court weigh and assess what has been presented to it to decide whether in light of all the circumstances, the proponent's explanation is or is not pretextual." *MacKintrush*, 334 Ark. at 399, 978 S.W.2d at 297. This Court has further stated:

> If the strike's opponent chooses to present no additional argument or proof but simply to rely on the *prima facie* case presented, then the trial court has no alternative but to make its decision based on what has been presented to it, including an assessment of credibility. We emphasize that following step two, it is incumbent upon the strike's opponent to present additional evidence or argument, if the matter is to proceed further.

*Id.*

Because Owens chose not to present any additional argument or proof that the State's reason for striking Carey was not race neutral and was prejudicial, the circuit court was not obligated to proceed further but was only required to make a decision based on what had been presented to it at that time. *See Stenhouse v. State, supra*. We note that at the time of the *Batson* challenges, three African-Americans were already seated on the jury. That, in itself, can answer the charge of purposeful discrimination. *See Ratliff v. State*, 359 Ark. 479, 199 S.W.3d 79 (2004) (stating that the best answer the State can have to a charge of discrimination is to point to a jury which has black members). Based on all the circumstances

before the circuit court at the *Batson* hearing, we hold that the court's refusal to find a *Batson* violation was not clearly against the preponderance of the evidence.

## II. Photo Authentication

Owens next contends that the State did not lay a proper foundation for the admission of State's Exhibits 1 and 2, which were the still photographs that were taken from the videotape in the E-Z Mart surveillance camera. According to Owens, the State, as the proponent of the evidence, had the burden of proving that the photographs had not been altered and that there existed a proper chain of custody for this evidence. He claims that the prosecutor failed to meet this burden, because he did not admit the photographs through a witness who could inform the court whether the images had been enhanced or altered. Merely offering the evidence through the victim, Paul Aku, was, according to Owens, improper in this case because Aku did not take the photographs, and he had not viewed the videotape from which the photos were digitally derived. Thus, according to Owens, Aku had nothing to do with the preparation of the photographs and had no idea whether they had been enhanced or manipulated by a computer.

Owens further asserts that because the Rules of Evidence typically require the proponent of evidence to bear the burden of proving all foundational requirements for its admissibility, the rule should be the same in this case. He, therefore, concludes that the circuit court erred in shifting the burden of proof to himself as the opponent of the exhibits.

As a third point, Owens urges that the foundational deficiency was not cured by the admission of the videotape into evidence. He emphasizes that even though the jury was allowed to view the videotape made by the surveillance camera at E-Z Mart, the jury did so well after the photographs had been introduced into evidence. As a result, the jury did not have a full and fair opportunity to compare the videotape to the photographs, because the jury saw and heard about them before it saw the videotape and never had an opportunity to actually compare the photographs to the tape. Thus, Owens concludes that these circumstances should not relieve the State of its burden of laying the foundation for State's Exhibits 1 and 2.

Owens's fourth and final argument is that the circuit court's error was prejudicial and cannot be deemed harmless. Because

identity was the entire issue at trial, and because the prosecutor offered the photographs as proof of his identity, Owens argues that the admission of such photographs was not harmless error. He concludes with a supplication to this court that the proponent of digital images has the burden of laying an appropriate foundation for admissibility comparable to the foundation laid in *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), with witness testimony explaining the process by which photographs had been enhanced.

In discussing our standard of review for evidentiary rulings, we have said that the trial courts have broad discretion and that a trial court's ruling on the admissibility of evidence will not be reversed absent an abuse of that discretion. *See, e.g., McCoy v. State*, 354 Ark. 322, 325, 123 S.W.3d 901, 903 (2003); *Hawkins v. State*, 348 Ark. 384, 386, 72 S.W.3d 493, 494 (2002).

As an initial matter, we disagree that it was essential for purposes of laying a proper foundation to have the person who actually took the still photographs from the videotape be in court to testify. Our Rules of Evidence provide that authentication or identification of evidence may be proven by: "Testimony of a witness with knowledge that a matter is what it is claimed to be." Ark. R. Evid. 901(b)(1) (2005). In the instant case, the State provided exactly that. Paul Aku testified that the still photographs taken from the surveillance camera's videotape depicted the scene at that convenience store accurately.

Moreover, in *Williamson v. State*, a police officer had reviewed the transcript made from the audio tapes of the defendant while he listened to them. 267 Ark. 46, 48, 590 S.W.2d 847, 848 (1979). We held that the police officer's testimony of authenticity was sufficient to support the tapes' admissibility at trial. In doing so, we made an analogy to the admissibility of photographs, noting that earlier, this court held, in *Wheeler v. Delco Ben*, 237 Ark. 55, 371 S.W.2d 130 (1963), that a photograph may be authenticated by a witness who neither took the picture nor was present when it was taken. *Williamson*, 267 Ark. at 49, 590 S.W.2d at 848. We, thus, concluded that the testimony of the police officer was sufficient authentication "especially as there was no proof questioning the authenticity of the tapes." *Id.*

In sum, Paul Aku, the only eyewitness to the crime, testified that the photographs were an accurate depiction of the events that took place on the evening of November 15, 2003. He further testified about his knowledge of the surveillance cameras

and the types of images he frequently had observed on the monitors at the E-Z Mart. We hold that the State met its burden of proof required for authenticating the photographs in this case, and, thus, laid a proper foundation for admission of the photographs. In addition, we do not agree that this court should impose a higher burden of proof for the admissibility of digital photographs merely because digital images are easier to manipulate. There was no abuse of discretion by the circuit court in this regard.

■ Moreover, we further disagree with Owens that expert testimony of no alteration was required when there was no indication that the still photographs had been enhanced from the videotape or altered in any way. This is unlike the situation in *Nooner v. State, supra*, where the still photographs had been enhanced and the State used witnesses to explain the enhancement process and to show the photographs had been enhanced, but not altered, from the images on the videotape. 322 Ark. at 103, 907 S.W.2d at 686.

■ As a final point, we hold that Owens's argument to this court that the playing of the videotape for the jury after the introduction of the still photographs did not allow for a proper comparison was not made to the circuit court. Hence, it is not preserved for our review. *See Roston v. State*, 362 Ark. 408, 208 S.W.3d 759 (2005).

A review of the record for other reversible error pursuant to Ark. Sup. Ct. R. 4-3(h) has been made, and none has been found.

Affirmed.