Chico CHILDS *v.* STATE of Arkansas

CA CR 05-1245                    237 S.W.3d 116

Court of Appeals of Arkansas
Opinion delivered June 14, 2006

*Dwain Oliver*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant Chico Childs was convicted in a jury trial of possession of cocaine with intent to deliver and fleeing. He was sentenced to fifteen years in prison and fined $50. On appeal, Mr. Childs argues that, by denying his peremptory challenges during jury voir dire, the trial court violated his right to a fair and impartial jury as guaranteed by the Sixth Amendment and Article 2, section 10 of the Arkansas Constitution. We affirm.

During voir dire, the prosecutor objected to defense counsel's use of all eight of his peremptory challenges to exclude white jurors. Defense counsel responded, "Well, your honor, we have to remember that we have dealt with this panel on several occasions, in depth on two capital murder cases in another trial area, so I'm going off previous questions of these witnesses, I mean of these jurors also. They may not have responded today, but I've dealt with this crowd three times already." The trial court found that the State made a prima facie case of purposeful discriminatory intent and asked defense counsel to give race-neutral explanations for each strike.

Appellant's counsel gave the following reasons for each of the peremptory strikes:

> *Mr. Cannatella*: I just had a bad feeling about Mr. Cannatella. . . . We struck him on the, I think the capital murder case. I remember he didn't seem to be a pick then. I remember we struck him, so I felt like I'd do it this time, too. I can't remember all the details, but it wasn't for a racial basis, it was just a fact that I think we struck him back then. He was just kind of, not pro-defense, if I remember correctly. But it definitely wasn't for any racial reason.

> *Mr. Norris and Mr. Morphis*: [Mr. Norris] told me that he would definitely lean more toward law enforcement than a regular person. . . . Morphis and Norris both said that they would definitely be more apt to lean toward a law enforcement person than a regular person.

> *Ms. McNemar*: I just picked her because I had a bad feeling about her. She doesn't look like she really wants to be here. I thought, well, she's going to be the one who's more prone to wanting to punish somebody for the trial. . . . She just looks like somebody who'd be more of a strict nature to me.

> *Mr. Conte*: Mr. Conte was, his comment about drugs being a cancer on society and this being a drug case, I immediately thought

to strike him right then when I heard that. He has strong beliefs as to the drug business, I guess.

*Ms. Miller:* I can't recall her specific answers. I just, again, it was one where I had a bad feeling of her. It had nothing to do with race. I just didn't feel the feedback was what I wanted to hear.

*Ms. Beavers:* She's had Bob Graham, one of the witnesses, over to her house on many social occasions. . . . I feel more comfortable not having her there because she's going to be more prone to law enforcement because she's friends with law enforcement.

*Mr. Hayes:* I just remember from the capital murder case we didn't care for his responses either. And I just remember that based on that he just looks familiar and we didn't want him before. So the way I recall it, I wouldn't want him now.

At the conclusion of appellant's counsel's explanations, the trial court announced, "Based upon the responses made by defense counsel, I would allow the following strikes. . . . These are the ones I will allow to be excused based on responses. Norris, Morphis, Beavers. . . . And I will not remove the others." Over appellant's objection that none of his peremptory challenges were based on race, the jury was empaneled. Ms. Miller was not seated on the jury. However, Mr. Cannatella, Ms. McNemar, Mr. Conte, and Mr. Hayes were seated as jurors, and it is the trial court's refusal to allow appellant to strike these jurors that is at issue on appeal.

For reversal of the trial court's ruling, Mr. Childs cites Ark. Code Ann. § 16-33-305(b) (Repl. 1999), which provides:

The defendant shall be entitled to twelve (12) peremptory challenges in prosecutions for capital murder, to eight (8) peremptory challenges in prosecutions for all other felonies, and to three (3) peremptory challenges in prosecutions for misdemeanors.

Because Mr. Childs was being prosecuted for a felony other than capital murder, he was entitled to eight peremptory challenges. While peremptory challenges are not guaranteed by the Constitution, Mr. Childs cites *Cannon v. Lockhart*, 850 F.2d 437 (8th Cir. 1988), where the Eighth Circuit Court of Appeals held that the ability to use peremptory challenges, once granted by statute, falls within the mandate of the Sixth Amendment that a defendant be tried by a fair

and impartial jury. Mr. Childs submits that there was no evidence presented that his challenges were on the basis of race, and asserts that this case must be reversed because he was denied the full use of his peremptory strikes.

The State counters that the trial court's ruling should be affirmed pursuant to its finding that the challenges were made on the basis of race. In *Batson v. Kentucky*, 476 U.S. 79 (1986), which was not cited in appellant's brief, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the State from striking a juror as a result of racially discriminatory intent. Similarly, a criminal defendant may not exercise peremptory challenges based on the race of the juror or racial stereotypes. *Holder v. State*, 354 Ark. 364, 124 S.W.3d 439 (2003).

In *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000), our supreme court stated of *Batson* challenges:

> We have delineated a three-step process to be used in the case of Batson challenges. *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a *prima facie* case of racial discrimination. *Id.* Second, once the strike's opponent has made a *prima facie* case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. *Id.* If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. *Id.* Here, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. *Id.*

*Id.* at 538-39, 10 S.W.3d at 911-12.

We will reverse a trial court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997). Contrary to the State's argument, the trial court in this case made an error under *Batson*.

When the State made its *Batson* challenge below, the trial court found, under step one of the three-step process, that the State made a *prima facie* case of racial discrimination. The burden then shifted to Mr. Childs to present race-neutral explanations for his strikes. After appellant's counsel gave his explanations regarding each strike, the trial court found that a race-neutral reason was

not given for any of the four strikes now at issue. Thus, the trial court never passed on the third step of the analysis, where the strike's opponent attempts to prove purposeful discrimination. This was error.

■ As our supreme court stated in *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004), the race-neutral explanation must be more than a mere denial of racial discrimination, but need not be persuasive or even plausible, and, indeed, may even be silly or superstitious. Here, appellant's counsel's explanations went beyond a mere denial of racial discrimination and he offered race-neutral factors such as a juror being "not pro-defense," a juror having strong beliefs against the drug business, and a juror who appeared unhappy to be there and who might want to punish the defendant as a result. While these reasons may not be persuasive, they are indeed race-neutral. Therefore, the proper procedure was for the trial court to proceed to step three and consider whether the State could persuade it that the expressed motive of the striking party was not genuine, but rather the product of discriminatory intent. The trial court failed to do this, and its decision to uphold the *Batson* challenges at issue was clearly against the preponderance of the evidence.

■ Nevertheless, we agree with the State's alternate argument that we are constrained to affirm because, in his brief, Mr. Childs fails to make the proper argument. Mr. Childs correctly asserts that he was entitled to peremptory challenges in his criminal prosecution. However, he fails to acknowledge the exception to that rule under *Batson*, which was specifically relied on by the trial court in reaching its decision. The only statement in appellant's brief that relates to the pertinent inquiry on appeal is an assertion in his statement of facts that there was no evidence to support the prosecution's challenge that the peremptory strikes were based on race. However, an argument consisting of one statement is insignificant to mount the issue on appeal. *See Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). Moreover, we will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2003). As it is not the duty of this court to make appellant's argument for him, we must affirm.

Affirmed.

GLADWIN and BIRD, JJ., agree.