2009 Ark. App. 414

**Phillip F. HAMMOCK, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1045.**

Court of Appeals of Arkansas.

May 20, 2009.

Joseph P. Mazzanti, III, Lake Village, for appellant.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

DAVID M. GLOVER, Judge.

A Drew County jury found appellant, Phillip Hammock, guilty of failing to register as a sex offender. Hammock was sentenced, as a habitual offender, to twenty-one years in prison. On appeal, he argues that Arkansas's sex-offender registration requirement does not apply to him, that his conviction for failure to register as a sex offender is an unconstitutional *ex post facto* application of the law, and that the trial court's ruling on a *Batson* challenge was against the preponderance of the evidence. We affirm.

It is undisputed that in June 1996 Hammock pleaded guilty in the state of Wash-

ington to the offense of third-degree rape. He was sentenced to fourteen months in prison, with two additional years of community placement, and required to register as a sex offender in Washington.

Testimony from Paula Stitz, the manager of the Arkansas Crime Information Center sex-offender registry, confirmed that Hammock registered as a sex offender on March 12, 2002, and then regularly sent back required verification letters every six months until February 2004, when he ceased doing so. Stitz further testified that if Hammock was required to register in any other state, he was also required to register in Arkansas.

For his first point of appeal, Hammock argues that his conviction for failing to register as a sex offender was an unconstitutional *ex post facto* application of the law and that the trial court erred in applying the registration requirements of the Sex Offender Registration Act of 1997, found at Arkansas Code Annotated section 12-12-901 *et seq.*, to him. Specifically, he argues that section 12-12-905 (Supp.2007) did not apply to him because the statute did not become effective until after his conviction. This statute provides, in pertinent part:

(a) The registration or registration verification requirements of this subchapter apply to a person who:

(1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense;

(2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense[.]

The trial court found that subsection (a)(2) was applicable to Hammock, as he was still serving some form of community supervi-

sion after August 1, 1997. Hammock argues that the language of the statute "states that registration is applicable to him only if he was serving some form of community supervision for *an adjudication of guilt on or after August 1, 1997.*" (Hammock's emphasis.)

We hold that it is unnecessary to interpret section 12–12–905 in order to determine whether Hammock was required to register under it as a sex offender in Arkansas because the next successive statutory section, § 12–12–906(a)(2)(A)–(B)(i) (Supp.2007), clearly requires Hammock to register as a sex offender. This statutory section requires in more definite terms:

> (2)(A) A sex offender moving to or returning to this state from another jurisdiction shall register with the local law enforcement agency having jurisdiction within three (3) business days after the sex offender establishes residency in a municipality or county of this state.
>
> (B)(i) Any person living in this state who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty of a sex offense shall register as a sex offender in this state whether living, working, or attending school or other training in Arkansas.

Hammock's conviction in the state of Washington required that he register as a sex offender; therefore, under section 12–12–906(B)(i), he is also required to register as a sex offender in Arkansas.

For his second point of appeal, Hammock, who is African–American, argues that the trial court's ruling on his *Batson* challenge was against the preponderance of the evidence. He argued that the State

exercised five peremptory challenges, four against African–American jurors and one against a Caucasian juror,[1] in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In *Hinkston v. State,* 340 Ark. 530, 538–39, 10 S.W.3d 906, 911–12 (2000), our supreme court set forth the three-step process to be used by our trial courts in the case of *Batson* challenges:

> We have delineated a three-step process to be used in the case of *Batson* challenges. *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998). First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a *prima facie* case of racial discrimination. *Id.* Second, once the strike's opponent has made a *prima facie* case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. *Id.* If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. *Id.* Here, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. *Id.*

A trial court's ruling on a *Batson* challenge will be reversed only when its findings are clearly against the preponderance of the evidence; some measure of deference is given to the trial court due to its opportunity to observe the parties and determine their credibility. *Id.* at 539, 10 S.W.3d at 912.

---

1. The trial court required the State to accept one of the African–American jurors that it initially struck; the State filed a notice of cross-appeal regarding this issue, but abandoned its pursuit of the cross-appeal. The jury panel ultimately had two African–American jurors seated on it.

When it was determined that the court reporter's recorder had not been on during his *Batson* challenge, the trial court summarized on the record both Hammock's *Batson* challenge and the State's explanation. The trial court stated that defense counsel made a *Batson* challenge to the prosecutor's five strikes; that the prosecutor explained that all of the strikes he made, including the one against the Caucasian juror, were supported by juror questionnaires that reflected that each juror had previous criminal charges filed against either the juror or a family member; and that the State's explanation was not disputed by defense counsel. The trial court also noted that it had made the State take one of the stricken jurors despite her answers on the questionnaire. The trial court then asked defense counsel if there was anything else. In response, defense counsel stated only that he had made an exception to the other three strikes made by the prosecutor. The prosecutor then offered that one of the stricken jurors had stated the day before that he held it against the prosecutor that he had sent his brother to prison; the prosecutor also noted that he did keep a black male on the jury. The colloquy continued. The trial court then stated that it was trying to be practical about the situation, noting that "a lot" of African–Americans took themselves off the panel because of their reluctance to judge, which the court could do nothing about. Further, the trial court advised the prosecutor that the State was put on notice that if it was going to use the fact that the juror or a family member had been charged with any offense other than a traffic offense to strike a minority, there had to be "follow up" to find out if the offense "happened in the last twenty years or last two years, where did it happen, first cousin, second cousin, brother, sister." For emphasis, the trial court explained that being charged with an offense could not be used in an unlimited manner for excusing any particular race. Commenting that it was the best that could be done in the situation, the trial court reiterated that it had made the State take one of the stricken African–American jurors, which left two African–American jurors on the jury panel. Following this, the trial court, for the second time, asked defense counsel if there was anything else. Defense counsel responded only by asking that the record reflect that his client was African–American.

■ Here, Hammock concedes that the State's reason for striking the African–American jurors was race neutral. His argument, therefore, lies within the third prong of the test for a *Batson* challenge— that the trial court did not give him the opportunity to persuade it that the State's motive in striking the jurors was not genuine but was rather the product of discriminatory intent and he was therefore entitled to a new trial.

Our earlier recitation from the record of Hammock's *Batson* challenge indicates that the trial court gave Hammock two opportunities to add anything further to his challenge. The first time, defense counsel noted, without more, that he had made an exception to the other three strikes made by the prosecutor. The second time, defense counsel responded by asking, without more, that the record reflect that his client was African–American. The record reflects there was no attempt by defense counsel to add anything further, even after being asked by the trial court on two occasions. Though Hammock had the opportunity to make additional arguments to the trial court, he failed to do so. In *Weston v. State,* 366 Ark. 265, 275, 234 S.W.3d 848, 856 (2006), our supreme court, citing *Owens v. State,* 363

Ark. 413, 417, 214 S.W.3d 849, 852 (2005) (internal citations omitted), held:

> [I]t is the responsibility of the party opposing the strike to move the matter forward at the third stage of the process and to meet the burden of persuasion. This is not the trial court's responsibility, as the trial court can only inquire into the evidence that is made available to it. According to this court, if the party opposing the strike does not present more evidence, no additional inquiry by the trial court is required.

Affirmed.

GLADWIN and GRUBER, JJ., agree.