William YOUNG *v.* STATE of Arkansas

CR 07-378            266 S.W.3d 744

Supreme Court of Arkansas
Opinion delivered November 1, 2007

*C. Scott Nance*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant William F. ("Bill") Young, Jr., was convicted by a Sharp County jury of capital murder, aggravated robbery, residential burglary, and two counts of theft of property. The circuit court sentenced him to life imprisonment without the possibility of parole for the capital murder, life imprisonment for the aggravated robbery, twenty years' imprisonment and a $15,000 fine for the residential burglary, ten years' imprisonment and a $10,000 fine for one count of theft of property, and twenty years' imprisonment and a $15,000 fine for the other count of theft of property. He now appeals, alleging the circuit court erred in failing to grant his motion for directed verdict. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2007), as Young received sentences of life imprisonment. We find no error and affirm.

On New Year's Day of 2006, Steve Furr visited the Cave City apartment of his ex-wife, Devonda Furr. At some point during the evening hours, while Steve was drinking beer in the apartment parking lot, he was approached by Bill Young and his

wife, Leslie. The Youngs lived in the same apartment complex as Devonda but testified that they had never met Steve. Bill and Leslie visited and drank beer with Steve and Devonda at the apartments. At approximately eleven o'clock, the group left in Steve's truck to go to the residence of a mutual friend, Greg Girtman. The Furrs' ten-year-old son accompanied them. The adults continued drinking at the Girtman residence. Devonda testified that, while they were there, Leslie exposed her breasts to Steve, Greg Girtman, and the Furrs' son. As a result of this incident, Devonda requested to be taken home. She and her son were dropped off at her apartment at approximately 1:20 A.M. on January 2. The last time Devonda saw her ex-husband was when Steve, Bill, and Leslie left in Steve's truck.

According to the testimony of Bill and Leslie, they accompanied Steve to his trailer home near Cave City so that Steve could pick up more alcohol. When they arrived at the residence, Steve made drinks and asked Bill to work on his malfunctioning computer, which sat on a desk facing a wall. Leslie testified that, while her husband's back was turned, Steve made sexual advances toward her. This allegedly went on for approximately ten to fifteen minutes. Leslie claimed that Steve put his hand on her shoulder and attempted to unbutton her pants. It was not until he put his hand around her throat and started choking her that Leslie began to yell. Her husband and Steve then got into an altercation. Leslie saw her husband stab Steve twice, causing him to fall backwards over the side of the chair in which she had been sitting. At that point, Bill instructed Leslie to leave the trailer and wait in Steve's truck, and to leave if Steve came outside. Leslie testified that she waited in the truck for approximately ten to fifteen minutes, until Bill came out with an unidentified item, placed it in the truck and then drove away.

Later on January 2, Devonda took her two children to Steve's residence to pick up a video game that they had left there. Devonda testified that Steve's truck was missing when they arrived. She and the children found Steve dead in a recliner in the trailer, covered in blood and with his pants pulled down. Law enforcement officials who responded to Devonda's 911 call recovered a butcher knife and screwdriver from the recliner in which the victim was sitting. Both were found under Steve's body. An associate medical examiner with the Arkansas State Crime Laboratory, Dr. Adam Craig, testified that the victim incurred twelve stab wounds, consistent with the use of the knife, and approxi-

mately twenty-two smaller abrasions, consistent with the use of the screwdriver. Dr. Craig noted that some of the victim's wounds could be characterized as defensive. He also pointed out the yellow-brown color and the clustering of some of the wounds, both of which suggested that those wounds were inflicted post-mortem. Dr. Craig testified about one wound in particular, which appeared to have been caused by a third weapon. A stab wound to the victim's chin broke his jaw and crushed his larynx. Dr. Craig stated that, in his opinion, such a wound would have been caused by a heavy blunt-ended object. The State introduced a knife owned by Bill that was fashioned out of a railroad spike. Greg Girtman testified that, while the group was at his residence, Bill was showing it off and boasting that it could puncture anything. Based on this evidence, the State suggested that the railroad-spike knife was the blunt-ended object that caused the wound to Steve's chin.

Police officers at the crime scene also found a bag of dog food, just inside the door of Steve's trailer. The dog food had been set on fire and had partially burned an adjacent wall. They also discovered a propane stove that had been ripped off the bar in the kitchen. The gas line attached to the stove had been broken, and officers in the trailer could smell and hear gas escaping from the line. Bill was charged with attempted arson based on this evidence. The jury returned a guilty verdict on the attempted-arson charge but failed to make a finding as to the amount of money damages caused to the property. The prosecutor conceded at trial that, because no evidence of the amount of damages was presented, the defense was entitled to a directed verdict on the charge of attempted arson.

Police officers photographed places in the trailer from which property had obviously been removed. Bill admitted at trial to taking the victim's television and computer with him when he left, purportedly because he knew his fingerprints would be found on both items. He also admitted to taking Steve's truck, claiming it was the only form of transportation he and Leslie had. Also, there were several tools already in the truck that Steve used in his refrigeration business.

Jimmy Doug Simpson, a long-time acquaintance of Bill, testified that he saw Bill and Leslie, along with two of their children, at the residence of a mutual friend on the evening of January 2. Bill had driven Steve's truck to the residence. Simpson testified that, at some point during the night, Bill asked Simpson to

accompany him to drop the truck off in the garage of Simpson's mother.[1] Simpson agreed, and when they dropped off the truck, Bill removed several tools from Steve's truck and placed them in Simpson's truck. They spent the night at the friend's house, and Bill woke Simpson the following morning, asking to be taken to a pawn shop. Simpson took Bill, Leslie, and the two children to E-Z Pawn in Batesville. An E-Z Pawn employee testified that Bill pawned several tools that were later identified as belonging to Steve, including a thermometer, drill, tool pouch, Sawsall, battery charger, and gauges. Simpson testified that, after leaving the pawn shop, he dropped Bill, Leslie, and the children off at a Batesville doctor's office, where Bill intended to meet up with someone who could give them a ride home to Cave City.

Anita Miller testified that Bill and Leslie approached her at the doctor's office on January 3, while she was in the middle of an appointment. They asked for a ride home, and she agreed. She gave them the keys to her car and allowed them to wait there while she finished her appointment. When she came out of the doctor's office, however, police officers were arresting Bill and Leslie.

Bill was charged with capital murder, aggravated robbery, residential burglary, attempted arson, and two counts of theft of property. As a threshold issue, we note that his sufficiency-of-the-evidence challenge to the theft-of-property charges was not properly preserved for our review. Specific motions for directed verdict are to be made at the close of the evidence offered by the prosecution and at the close of all the evidence. *See* Ark. R. Crim. P. 33.1(a) (2007). The failure to make the motions at the proper time and in the proper manner constitutes a waiver of any sufficiency-of-the-evidence challenge. *See* Ark. R. Crim. P. 33.1(c). Bill moved for a directed verdict only on the capital-murder, aggravated-robbery, and residential-burglary charges; thus, our review is limited to those convictions.

We have long held that a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is

---

[1] Bill testified that Simpson claimed to know the Furr family.

that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

## I. The Offense of Aggravated Robbery

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102 (Repl. 2006 & Supp. 2007). A robbery becomes aggravated if the person is armed with a deadly weapon, represents by word or conduct that he is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark. Code Ann. § 5-12-103 (Repl. 2006 & Supp. 2007). In the instant case, the jury found that Bill was armed with a deadly weapon.

We hold that substantial evidence supports the aggravated-robbery conviction. First, it is undisputed that Bill employed physical force upon Steve. He admitted to stabbing Steve; this admission was corroborated by the testimony of Leslie, who witnessed the stabbing. Second, the evidence indicates that Bill was armed with a deadly weapon. He admitted to the use of the knife found at the crime scene, and the testimony of both Greg Girtman and Leslie Young established that Bill carried the knife fashioned from a railroad spike on the night of the homicide.

Moreover, Bill's assertion that he lacked the purpose to commit theft is without merit. He argued at trial that he did not set out to rob Steve and that he took the television and computer only because his fingerprints were on them and the truck only because it was his sole means of transportation. According to Bill, he believed at the time that Steve may have still been alive and would attack him. However, there was overwhelming evidence showing that Bill intended to deprive Steve of the property.

Gary Bradley, a friend of Steve, testified that he saw Steve's truck on the road on January 2. He stated that he followed the truck and observed Leslie driving it, with a man sitting beside her. He also claimed that, when he caught up with the truck, Leslie cut him off and ran his vehicle into the ditch. David Drew, another long-time acquaintance of Bill, testified that, at approximately eleven o'clock on the morning of January 2, Bill, Leslie, and two of their children came to his house in Steve's truck. Drew stated that Bill asked him to pawn some tools for him, which Bill could not do himself because he did not have his driver's license at the time.

Terry Garrison, who worked with Steve, testified that he saw Steve's truck at a Batesville laundromat on the morning of January 2. Believing Steve would be in the truck, Garrison approached the truck to find Bill getting out of it. He also saw a woman "ducking down" and a couple of children in the truck. Garrison testified that he was not completely sure at the time that it was Bill exiting the truck. After learning that Steve had been killed, Garrison returned to the laundromat to ask the owners if they had identified the person driving Steve's truck. While there, Garrison spoke to Nolan Hennings, who also testified at trial. Hennings testified that he had seen and spoken to Bill and Leslie that morning in the convenience store neighboring the laundromat. He stated that they were driving Steve's truck and that two young boys were with them. Bill asked Hennings if he was interested in buying some items from him, and he proceeded to open the back of Steve's truck to show Hennings several items, including shotguns and a television. Steve's truck was later found abandoned on a gravel road in Independence County. Seven fingerprints lifted from the vehicle were determined to be those of Bill Young.

The fact that Bill pawned Steve's tools, tried to sell other stolen items, and abandoned the truck in the days following the homicide establishes a purpose to commit theft. Theft requires only that a person knowingly take or exercise unauthorized control over, or make an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property. Ark. Code Ann. § 5-36-103 (Repl. 2006 & Supp. 2007). As this court has long held, a criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Watson v. State*, 358 Ark. 212, 188 S.W.3d 921 (2004).

Moreover, because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his actions. *Id.* In the instant case, it is clear from the evidence set forth above that Bill intended to deprive Steve of the property, and thus had a purpose of committing theft, when he used force against Steve.

Our court has upheld aggravated-robbery convictions in situations similar to the one at bar, where the purpose to commit theft was not apparent until after the force was employed. *See Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). In the *Grillot* case, the evidence suggested that the homicide was the result of a murder-for-hire contract. *Id.* After the shooting, perpetrated by a co-defendant, Grillot took the victim's wallet and vehicle. *Id.* He later abandoned the vehicle and threw the keys and wallet into a canal. *Id.* We stated, "[a]ll these acts stemmed from an event where a deadly weapon was used. From these facts, a jury could reasonably infer that neither the truck nor the wallet were likely to be restored to Jackson, or his estate." *Id.* at 308, 107 S.W.3d at 144. Because deprivation of property requires only disposal "under circumstances that make its restoration unlikely," Ark. Code Ann. § 5-36-101(4)(C) (Repl. 2006 & Supp. 2007), we held that force was used with the purpose to commit theft. *Id.* Similarly, in the instant case, though Steve was killed or at least injured before the purpose to commit theft was apparent, Bill's actions following the homicide clearly show a purpose to commit theft. Accordingly, we conclude there was sufficient evidence to support the aggravated-robbery conviction.

## II. *The Offense of Residential Burglary*

A person commits residential burglary if he enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2006 & Supp. 2007). To "enter or remain unlawfully" means to enter or remain in or upon premises when not licensed or privileged to enter or remain in or upon the premises. Ark. Code Ann. § 5-39-101(2)(A) (Repl. 2006).

Defense counsel argued at trial that Bill could not be guilty of burglary because he entered the trailer lawfully, as he was invited by Steve, and because, at the time of entrance, he did not

intend to commit any crime. According to the testimony of Bill and Leslie, the circumstances necessitating the stabbing and the taking of property developed only after they entered lawfully. We have overturned a burglary conviction where the defendant developed the intent to commit an offense punishable by imprisonment only after entering onto the premises. *See Hickerson v. State*, 282 Ark. 217, 667 S.W.2d 654 (1984). In *Hickerson*, the defendant entered a home through an unlocked door and did not carry a firearm. *Id*. According to the victim, a twelve-year-old girl, he spoke with her for some time before drawing a gun, taking her to his car, driving away, and raping her.[2] *Id*. We held that, because there was no evidence that the defendant carried a firearm at the time he entered the residence, the defendant lacked the intent to commit a felony at the time of entrance. *Id*. Therefore, he could not be guilty of burglary. *Id*.

The *Hickerson* case is distinguishable from the one at bar. In *Hickerson*, we stated that, if the jury had found that the defendant carried a firearm, "there would be substantial evidence that Hickerson intended to commit a felony when he entered the house." *Id*. at 221, 667 S.W.2d at 656. In the instant case, the testimony indicated that Bill carried the knife made from a railroad spike with him on the night of the homicide. The jury could have inferred from this evidence the intent to commit a felony at the time of entrance. Furthermore, the residential-burglary statute clearly contemplates situations where the defendant enters lawfully but remains unlawfully. *See* Ark. Code Ann. § 5-39-201(a)(1). As the circuit court indicated, although Bill may have been licensed or privileged to enter the trailer, he was certainly not licensed or privileged to remain there after he began stabbing the owner and removing his property. For these reasons, we conclude that substantial evidence supports the residential-burglary conviction.

### III. The Offense of Capital Murder

A person commits capital murder if, acting alone or with one or more other persons, he commits or attempts to commit an enumerated felony, and, in the course of and in furtherance of the felony or in immediate flight from the felony, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann.

---

[2] It is unclear from where the defendant obtained this gun.

§ 5-10-101(a)(1) (Repl. 2006 & Supp. 2007). Aggravated robbery is included in the list of enumerated felonies. Ark. Code Ann. § 5-10-101(a)(1)(vi) (Supp. 2007). The prosecution in the instant case proceeded against Bill Young on a felony-murder theory, with aggravated robbery as the underlying felony.

■ A forensic DNA examiner from the Arkansas State Crime Laboratory testified that samples from the blue jeans of both Bill and Leslie Young contained Steve's DNA. In addition, an empty box of Maxum brand pepper spray was recovered from the crime scene. A canister of the same brand of pepper spray was found on Leslie's person at the time of her arrest. Finally, Anita Miller later discovered Steve's wallet, containing his driver's license, in her car under the seat where Leslie had been sitting prior to the arrest. This evidence, combined with that evidence reviewed earlier, establishes that the capital-murder conviction is supported by substantial evidence.

■ A conviction of capital murder under the felony-murder rule requires proof that Bill caused Steve's death in the course of and in furtherance of the aggravated robbery and under circumstances manifesting extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101(a)(1). Bill's own testimony indicated that he stabbed Steve and took the property as part of the same incident. The jury was free to disbelieve his testimony regarding the defense of his wife and to conclude that he killed Steve in order to rob him. The number of wounds, coupled with the testimony that there were some defensive and post-mortem wounds, is sufficient to show circumstances manifesting extreme indifference to the value of human life. Thus, it cannot be said that the jury's verdict rested on speculation and conjecture. The evidence supports the capital-murder conviction.

### IV. Rule 4-3(h) Review

Pursuant to Ark. Sup. Ct. R. 4-3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to the appellant, and no prejudicial error has been found.

Affirmed.