

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR-13-204

| | |
|---|---|
| TRENTON HOLLEY | **Opinion Delivered** October 22, 2014 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-11-448] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| APPELLEE | |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

A Faulkner County jury convicted Trenton Holley for a second-degree sexual assault of his fourteen-year-old stepdaughter, K.W. He was sentenced to seventeen years in prison. The issues here are whether the circuit court erred (1) by denying Holley's motion to suppress certain statements that he made while in police custody and (2) by admitting certain testimony during the sentencing phase. We affirm.

## I. *Background*

In mid-March 2011, K.W. told her mother, Dusty Holley, that her stepfather, Trenton Holley, came into her room on several occasions while she was sleeping and inappropriately touched her. Dusty reported the incident to the police, and on March 17, State Police Investigator Joni Clark spoke with Dusty Holley. Investigator Clark scheduled an interview on March 30, and Trenton Holley attended. During that interview, Holley told Investigator Clark that he had gone into K.W.'s room "to look at her" but that he "never touched her."



At the end of the interview, Clark arrested Holley and took him to jail. The next day, March 31, Clark recorded a second interview with Holley. During the second interview Holley admitted that he had touched K.W.'s vagina through her clothes. Both interviews were recorded by Investigator Clark. The State filed criminal charges against Holley in April 2011, alleging that he had engaged in deviate sexual activity with K.W.

## II. *The Suppression Issue*

In June 2012, Holley filed a pretrial motion to suppress incriminating statements he made during the March 31 interview, alleging that the State had induced a confession by a false promise of reward and leniency. The court held a motion hearing and addressed Holley's March 31 statement to Investigator Clark. Several witnesses testified about the details surrounding the March 31 confession.

Investigator Clark testified that Holley met with her voluntarily on 30 March 2011. Clark said that, at first Holley denied going inside K.W.'s room, but then said he went to get his cell phone and eventually admitted to looking at his stepdaughter. Clark said that she arrested Holley after the interview and that, while taking him to jail, he asked to make a deal. Holley wanted to plead to a misdemeanor because he would lose his job if convicted of committing a felony. Clark said that she told him that she could not offer him anything "because it would be coercion" but that she could talk to the deputy prosecuting attorney. Clark later relayed to Holley that the deputy prosecuting attorney would not offer him any deal; the prosecutor did, however, offer him a $15,000 bond. Clark explained that Holley

2



normally would be held without bond until his first appearance. Clark "did not recall" Holley's response to the bond offer.

When Investigator Clark met with Holley the next day, at his request, according to Clark, Holley signed a "Statement of Rights *Miranda* Warning Form". Holley then changed his story and admitted to touching K.W.'s vaginal area. Investigator Clark testified that she did not make Holley any promises if he confessed. She denied any physical intimidation, coercion, or that she had indicated that Holley could receive a lighter sentence or probation in exchange for his statement. On cross-examination, Clark said that she told Holley the message from the prosecuting attorney was: "No deal will be offered; however a $15,000 bond will be given if you make an admission." Co-investigator Todd Mize also testified that neither he nor Clark threatened, coerced, or promised Holley leniency as a quid pro quo for an admission.

Holley testified too, telling the court that he had "no idea" that he was going to be arrested on March 30 when he spoke with Investigator Clark. As Clark was walking him to the jail, Holley said that he discussed two concerns with her. The first was that he would lose his job if he didn't show up for work. The second concern was about whether the charge would be a misdemeanor or a felony. Holley thought he would see a judge the next day, March 31.

Holley testified that when he found out that he could be held until Monday without bond, he told Investigator Clark that he touched K.W. so that he could get a bond, get out of jail, and keep his job. According to Holley, Investigator Clark said that he could "have a $15,000 bond if I was willing to talk." Holley's understanding was that if he didn't tell Clark



that he "did it or confess to it" he would sit in jail some more; and if he wasn't at work by Friday he wouldn't have a job.

On cross-examination, Holley acknowledged that after he gave the second interview, he received a $15,000 bond and got out of jail. He agreed that Clark did not lie to him or give a false promise and that he understood his *Miranda* rights and that he "admitted to something so he could get out of jail." Without the promise of a bond, Clark said that he "would not have admitted to anything."

This court reviews a circuit court's decision denying a defendant's motion to suppress a confession by making an independent determination based on the totality of the circumstances, and the ruling will be reversed only if it is clearly against the preponderance of the evidence. *Fritts v. State*, 2013 Ark. 505. Circuit courts resolve conflicting testimony that arises from suppression hearings. *Id.*

A statement made while in custody is presumptively involuntary, and the State must prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Id.* A person subject to a custodial interrogation must first be informed of his right to remain silent and right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). To determine whether a waiver of *Miranda* rights is voluntary, this court asks if the confession was the product of free and deliberate choice or the product of intimidation, coercion, or deception. *Jones v. State*, 344 Ark. 682, 687, 42 S.W.3d 536, 540 (2001).



A statement induced by a false promise of reward or leniency is not voluntary. *Wallace v. State*, 2009 Ark. 90, 302 S.W.3d 580. When a police officer makes a false promise that misleads a prisoner, and the prisoner confesses because of it, then the confession was not made voluntarily, knowingly, and intelligently. *Roberts v. State*, 352 Ark. 489, 102 S.W.3d 482 (2003). Because "the object of the rule is not to exclude a confession of truth, but to avoid the possibility of a confession of guilt from one who is, in fact, innocent," a person seeking to have a statement excluded on the basis that a false promise was made must show that the confession induced by the false promise was untrue. *Fuson v. State*, 2011 Ark. 374, 383 S.W.3d 848.

In determining whether there has been a misleading promise of reward, we consider the totality of the circumstances. *Id.* This inquiry has two main components: the officer's statement to the defendant and the defendant's vulnerability. *Id.* If this court decides that the officer's statement is an unambiguous, false promise of leniency, then the defendant's statement is involuntary. *Id.* Nor do we assess the defendant's vulnerability if we first conclude that no false promise of reward or leniency was even made. *Id.* On the other hand, if the officer's statement is too ambiguous, then we assess the defendant's vulnerability, an analysis that considers (1) the age, education, and intelligence of the accused; (2) how long it took to obtain the statement; (3) the defendant's experience, if any, with the criminal justice system; and (4) the delay between the *Miranda* warnings and the confession. *Id.*



Considering the totality of all the circumstances, we hold that the circuit court did not err in finding that Holley made a voluntary and admissible statement when he told the police that he had touched K.W.'s vaginal area. We begin and end our analysis at the first step of the required analysis: because the police made no false promise, or a sufficiently ambiguous statement that might have misled a vulnerable defendant, there is no need to delve into Holley's vulnerability.

Investigator Clark's report to Holley was true—he was permitted to post a $15,000 bond without a court appearance and return to his job. Holley testified that he understood his *Miranda* rights, and the State offered documentary proof of Holley's acknowledgment. There was not much delay between the *Miranda* warnings and Holley's confession, and the overall length of the interview was less than one hour. True, there was conflicting testimony on Investigator Clark's alleged statement to Holley that she would "push for probation," but the circuit court could and did seemingly resolve that conflict in the State's favor. In any event, Holley does not argue the probation point here. Finally, there was no promise to dismiss the criminal charges.

The circuit court did not err in denying Holley's pretrial motion to suppress statements made during his custodial interview with Investigator Clark.

### III. *The Sentencing Issue*

We now turn to whether the circuit court mistakenly allowed testimony of alleged sexual contact between Holley and his sister, Shelly, during the sentencing phase of Holley's trial.



Holley filed a pretrial motion in limine asking the court to exclude testimony from any witness, other than the victim, about alleged sexual acts or sexual contact with him. The motion was based on Ark. R. Evid. 404(b), which prohibits the State, in part, from using past bad acts as character evidence to show a defendant is a criminal or a bad person. Ark. R. Evid. 404(b) (2013); *see also Hamm v. State*, 365 Ark. 647, 232 S.W.3d 463 (2006). Some of the statements Holley targeted were made during a phone call that Investigator Clark had recorded between Holley and his wife, Dusty. During the call Dusty asked Holley, "What about Shelly? Did you rub her boobs under her shirt?" Holley responded that "he did not know why he did it" and said that "it was not right in the head." Other targeted statements arose from the first recorded (March 30) interview between Investigator Clark and Holley, during which Clark asked Holley about the allegation; Holley responded, "My sister? That happened years ago, it was after she graduated high school. I did touch her." Holley explained that Shelly was living with his family and that, on one occasion, he approached Shelly while she was in his bed and touched her breasts.

These statements were not allowed to be used against Holley during the guilt phase of Holley's trial. But the same issue was raised again during the sentencing phase of the trial, and the court held a chambers meeting outside the jury's hearing. The State wanted the statements admitted; Holley wanted them excluded again for a number of reasons.

The court acknowledged its prior ruling that the Shelly evidence "wasn't relevant to the charge" during the guilt phase, but nonetheless allowed the statements to come in during the sentencing phase through Investigator Joni Clark and Dusty Holley. (Shelly never

appeared or testified during any phase of the trial.) Clark said that Holley told her that several years ago, when he and Shelly were adults and living in the same house, he approached Shelly while she was in his bed and touched her breasts on top of her clothes and that she had laughed. Dusty Holley testified that she had "confronted Trenton about something with Shelly," but he didn't tell her what he did, he only confirmed that it had happened.

This brings us to Holley's appellate argument that the court erred by letting the jury hear evidence of alleged prior sexual contact with his sister during the sentencing phase when it was excluded during the guilt phase. We review a circuit court's decision to admit evidence in the penalty phase of a trial for an abuse of discretion. *Id.* The pivotal legal point, however, is that we need not decide the issue presented because Holley cannot establish prejudice from the admission of the evidence during sentencing. A defendant who is sentenced within the statutory range—and short of the maximum sentence—cannot establish prejudice. *Tate v. State*, 367 Ark. 576, 583, 242 S.W.3d 254, 261 (2006) (declining to decide alleged sentencing-phase error because the defendant received less than the maximum sentence and therefore could not establish a prejudicial error).

The statutory sentencing range for second-degree sexual assault is five to twenty years, Ark. Code Ann. § 5-4-401(a)(3) (Repl. 2009), and Holley received seventeen years. Because Holley cannot establish a sentencing-phase error as matter of law, we need not address whether the circuit court erred in admitting the Holley/Shelly testimony in the first place.

IV. *Conclusion*

We affirm Holley's conviction and the related sentence.



Affirmed.

WYNNE and GLOVER, JJ., agree.

*Blagg Law Firm*, by: *Ralph Blagg* and *Nicki Nicolo*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.