

Cite as 2016 Ark. App. 280

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–15–960

| | |
|---|---|
| MICHAEL TODD<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** May 25, 2016<br><br>APPEAL FROM THE HEMPSTEAD COUNTY CIRCUIT COURT<br>[NO. 29CR–13–78]<br><br>HONORABLE DUNCAN CULPEPPER, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND DISMISSED IN PART |

## BART F. VIRDEN, Judge

A Hempstead County jury convicted appellant Michael Todd of commercial burglary, second-degree forgery, breaking or entering, and theft of property.[1] He was sentenced as a habitual offender to an aggregate term of seventy-five years' imprisonment and ordered to pay $32,500 in fines. Todd raises five points on appeal to this court: (1) the trial court erred in permitting the State to strike a potential juror, (2) the trial court erred in denying his motion to suppress, (3) the trial court erred in admitting Rule 404(b) evidence, (4) the trial court erred in denying his directed-verdict motions, and (5) the trial court erred in denying his motion for a new trial. We affirm in part and reverse and dismiss in part.

---

[1]In *Todd v. State*, 2015 Ark. App. 502, we remanded for the circuit clerk to compile separate records for Todd's appeal of the revocation of his suspended sentences in six cases and his convictions that are the subject of this appeal.

SLIP OPINION

I. *Jury-Trial Testimony*

Ronnie Tucker, an employee at Walmart in Hope, was working in the electronics department on February 19, 2013, when he encountered Todd and another individual, who "kinda stayed in the back." Tucker testified that Todd expressed interest in a computer and then presented a check for payment. Tucker testified that Feroyri Sampson's name was on the check. Tucker knew Sampson from working with Sampson's girlfriend. Tucker said that, when he looked at the name and then looked back at Todd, Todd abruptly said, "I did something for my brother and he gave me this check and told me to take care of it." Tucker accepted Todd's explanation because he knew that Sampson had brothers. Tucker testified that Todd selected the auto-check payment option, meaning that the cash register printed the pertinent information on a check and that the customer was then required to sign electronically using a signature pad. Once the transaction was complete, Tucker returned the check to Todd and gave him a printed receipt. Tucker explained that the paper check was no longer needed because the transaction was processed electronically.

Karen Duncan, customer-service supervisor at Walmart, testified that Tucker relayed to her what he described as a "weird" transaction. Duncan stated that, about ninety minutes after that transaction, a man returned the computer purchased by Todd, hoping to get cash back. Duncan, who also knew Sampson, called Sampson's girlfriend to alert her that someone had bought a computer with a check drawn on Sampson's account.

Tonya McLannahan, asset-protection manager for Walmart, testified that she reprinted a transaction receipt using an electronic journal and acquired the electronic signature

authorization in connection with the February 19, 2013 transaction. These documents were introduced into evidence. McLannahan said that the transaction number on each document was the same. With the date and a description of the item that was purchased, she was able to find surveillance video of the transaction for police. McLannahan further testified that, although Walmart is a commercial business that is open to the public, Walmart does not grant anyone a license to come into the store and commit crimes. McLannahan said that, to her knowledge, Todd had not been banned from Walmart.

Fallon Langston, Sampson's fiancée, testified that, after receiving a phone call from Duncan, she went to her car and saw that two DVD players were missing, along with Sampson's checkbook. She called Sampson and confirmed that he did not have his checkbook with him in his car. Sampson testified that he did not know Todd and had not given him permission to make a purchase on his behalf. Sampson identified the last four digits of his checking-account number on a reprinted transaction receipt from Walmart.

Otis Featherston, currently an inmate at the Arkansas Department of Correction, testified that he was with Todd on February 19, 2013, at Walmart in Hope. He said that they planned to purchase a computer, return the item for cash, and split the money. According to Featherston, Todd had the check used in their scheme that day. He specifically denied entering Langston's car and giving the checkbook to Todd.

Investigator Justin Crane with the Hempstead County Sheriff's Office testified that on February 19, 2013, Langston reported that two portable DVD players and a checkbook were taken from her vehicle in Hope. Langston relayed to Crane the information that she

had received from Duncan. After viewing surveillance video at Walmart, Crane developed Todd as a suspect. After his arrest, Todd was interviewed and made incriminating statements. The video of the entire interview was played for the jury.

In the interview, when asked about breaking or entering involving three vehicles in close proximity, Todd denied taking DVD players. With respect to the checkbook, Todd said, "Now, that I might've had a hand in." He said, "[T]here was a lot of shit we got into, and I was like, 'Man, we supposed to be splitting this and that,' and, you know, he be done got shit I didn't know about. I be checking cars, you know." Later, Todd said, "I ain't broke into nothing. Them vehicles, I don't never break into nothing. They be open." Todd said, "I didn't go in but one vehicle in Perrytown." Crane confronted Todd with the surveillance video from Walmart in Hope. Todd said, "I did the check. The damn laptop, I did." Todd said, "I just cashed the check, brother. I'll ride with that." He further said, "You caught me 'cause I was smoking crack and got to slipping and going in Wal-Mart." Later, Todd said, "But like I say, what you got me on is the Wal-Mart thing. You got me on that."

Investigator Larry Marion with the Nashville Police Department testified that on March 5, 2013, he received a report from Angela Burgess that someone had stolen checks from her car in Hope and had made unauthorized transactions at Walmart in Nashville. After viewing surveillance video, Marion identified Todd and Featherston as the people responsible for passing the checks. Marion said that Featherston had purchased a computer and that Todd had purchased two Wii consoles and games. Marion testified that Todd subsequently confessed his involvement.

4

The jury convicted Todd of commercial burglary and second-degree forgery, for which he was sentenced to thirty years' imprisonment for each offense and ordered to pay two $10,000 fines. He was also convicted of breaking or entering, for which he was sentenced to fifteen years' imprisonment and ordered to pay a $10,000 fine. On the theft-of-property conviction, which Todd does not challenge on appeal, he was sentenced to one year in the county jail and ordered to pay a $2,500 fine. The prison sentences were ordered to run consecutively for a total of seventy-five years.

## II. *Arguments and Discussion*

### A. Sufficiency of the Evidence

Although it is listed as his fourth point on appeal, we address Todd's challenge to the sufficiency of the evidence first due to double-jeopardy concerns. *Fowler v. State*, 2015 Ark. App. 579, 474 S.W.3d 120. Todd argues that the trial court erred in denying his directed-verdict motions because there was insufficient evidence to support his convictions. Challenges to the sufficiency of the evidence are considered in the light most favorable to the State, considering only the evidence in favor of the guilty verdict. *Piper v. State*, 2014 Ark. App. 472, 442 S.W.3d 17. The conviction is affirmed if supported by substantial evidence; that is, evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. The fact that evidence is circumstantial does not render it insubstantial. *Id*. Circumstantial evidence may be used to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion; this determination is a question of fact for the fact-finder. *Id*. The finder of fact is also tasked

with determining what portions of the witnesses' testimony are credible and must resolve all questions of conflicting testimony and inconsistent evidence. *Id*. The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence; it is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law. *Id*.

### 1. *Commercial burglary*

A person commits commercial burglary if he enters or remains unlawfully in a commercial occupiable structure of another person with the purpose of committing in that structure any offense punishable by imprisonment. Ark. Code Ann. § 5–39–201(b)(1) (Repl. 2013). "Enter or remain unlawfully" means to enter or remain in or upon the premises when not licensed or privileged to do so. Ark. Code Ann. § 5–39–101(2)(A). A person who enters or remains in or upon premises "that are at the time open to the public does so with license and privilege, *regardless of his or her purpose*, unless he or she defies a lawful order not to enter or remain on the premises." Ark. Code Ann. § 5–39–101(2)(B)(I) (emphasis added).

Todd contends that there was insufficient evidence to support his conviction for commercial burglary because he did not unlawfully enter or remain at Walmart and had not been banned from the premises. We agree.

In discussing the definition of "enter or remain unlawfully" as used in current section 5–39–101(2)(B), the Original Commentary to section 5–39–201 states that

> "[e]nter or remain unlawfully" is defined at § 5–39–101(3) [(1987)] so as to exclude entry on premises or parts of premises open to the public. Therefore, contrary to former law, *the person who enters a business open to the public for the purpose of shoplifting does not commit a burglary*.

(Emphasis added.) Our supreme court in *Holian v. State*, 2013 Ark. 7, noted that the Original Commentary that accompanied the enactment of the Arkansas Criminal Code in 1975 is "highly persuasive." *Id*. at 5.

The State elicited testimony from McLannahan that, although Walmart is open to the public, no one has a license to commit crimes there. The State cites *Young v. State*, 371 Ark. 393, 266 S.W.3d 744 (2007), where our supreme court affirmed a residential-burglary conviction and noted that "although Bill may have been licensed or privileged to enter the trailer, he was certainly not licensed or privileged to remain there after he began stabbing the owner and removing his property." *Id*. at 402, 266 S.W.3d at 750. *Young*, however, is distinguishable in that it involved residential burglary and section 5-39-101(2)(A). Here, we are dealing with commercial burglary, and subsection (2)(B) applies. We hold that there was insufficient evidence to support Todd's conviction for commercial burglary because Walmart is open to the public, Todd's purpose in entering the store is not determinative, and there was no evidence that Todd had been banned from the premises. Accordingly, we reverse and dismiss with respect to this conviction.

## 2. *Second-degree forgery*

A person forges a written instrument if, with purpose to defraud, the person utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act. Ark. Code Ann. § 5-37-201(a)(1) (Repl. 2013). A person commits forgery in the second degree if he forges a written instrument that

is a check. Ark. Code Ann. § 5-37-201(c). To utter a forged instrument is to put it in circulation, or to offer to do so, with such fraudulent intent. *Holloway v. State*, 90 Ark. 123, 118 S.W. 256 (1909).

Todd argues that the State failed to prove that he committed forgery because he never had Sampson's check. Todd points out that the check was not located and that Sampson's name was not signed on the check.

The surveillance video from Walmart shows Todd presenting a check to purchase a laptop computer. In his interview, Todd said that he "cashed" a check, but the reprinted receipt from the purchase indicated that payment had been made by check. Sampson testified that the receipt displayed the last four digits of his checking-account number. Sampson testified that Todd was not authorized to sign his checks. Although Todd argues on appeal that Sampson's name was not signed on the check, in his motion for directed verdict, defense counsel said, "There's no written instrument for the check, and we ask that that charge be dismissed." We do not address arguments raised for the first time on appeal. *Turner v. State*, 2012 Ark. App. 150, 391 S.W.3d 358. The check was not located because it had been returned to Todd once the transaction was complete, as is customary, and the check was processed electronically.

In short, Todd was not authorized by Sampson to use his checks, yet he put one of Sampson's checks into circulation electronically through Walmart's auto-check payment system. According to Featherston, the check was used in an attempt to defraud Walmart, and his testimony was supported by statements Todd made in his custodial interview. We



hold that there is substantial evidence to support Todd's conviction for second–degree forgery, and we affirm.

### 3. *Breaking or entering*

A person commits the offense of breaking or entering if, for the purpose of committing a theft or felony, he breaks or enters into any vehicle. Ark. Code Ann. § 5-39-202(a)(1) (Repl. 2013). Todd argues that there was no evidence that he entered Langston's car in order to get Sampson's checkbook. He contends that Featherston could have entered the car and given him the check at issue.

During his interview, Todd admitted entering an apparently unlocked car and stated that he "might've had a hand in" taking the checkbook. To the extent that Todd accuses Featherston of entering Langston's car and giving him the check, Featherston specifically denied this. Although Todd attempted to downplay his involvement during the interview, the jury could infer from the evidence that Todd entered Langston's car and took Sampson's checkbook. The jury determines credibility of the witnesses. *Piper*, *supra*. We hold that there is substantial evidence to support Todd's conviction for breaking or entering, and we therefore affirm.

### B. Exclusion of Potential Juror

During voir dire, a potential juror, Robert Vaughn, said in response to a question by one of the prosecutors that he could not "really figure out what somebody was intent to doing." The prosecutor moved to strike. Defense counsel said, "Your Honor, we're making a *Batson* motion, at this time. She's never questioned any other witnesses like that, and this

9

is the one of color, and we believe that she's using that as a tool to exclude blacks from the Jury." Another prosecutor pointed out that, in response to the prosecutor's question how can one know what someone else's intent is, Vaughn unequivocally stated, "You can't." After the court noted that the State had articulated a race-neutral reason for striking the potential juror, Vaughn was excused.

The appellant has the burden of making a prima facie case of discrimination in the selection of jurors. *Thompson v. State*, 301 Ark. 488, 785 S.W.2d 29 (1990) (citing *Batson v. Kentucky*, 476 U.S. 79 (1986)). That is done by showing (1) that the strike's opponent is a member of an identifiable racial group, (2) that the strike is part of a jury-selection process or pattern designed to discriminate, and (3) that the strike was used to exclude jurors because of their race. *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998).

Once a prima facie case has been made, the burden shifts to the prosecutor to give a sufficiently neutral explanation for the peremptory strike. *Id*. The explanation must be more than a mere denial of discrimination or an assertion that a shared race would render the challenged juror partial to the one opposing the challenge. *Id*. It need not be persuasive or even plausible. *Id*. The reason will be deemed race neutral "[u]nless a discriminatory intent is inherent in the prosecutor's explanation." *Id*. at 398, 978 S.W.3d at 296.

If a race-neutral explanation is given, the trial court must then decide whether the strike's opponent has proven purposeful discrimination. *Id*. The strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent. *Id*. If the strike's opponent chooses to present

no additional argument or proof but simply to rely on the prima facie case presented, then the trial court has no alternative but to make its decision based on what has been presented to it, including an assessment of credibility. *Id.*

The appellate courts will reverse a circuit court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *Owens v. State*, 363 Ark. 413, 214 S.W.3d 849 (2005). Todd argues that he made a prima facie case of discrimination given that the prosecutor "extensively" questioned Vaughn—a black man—but did not question other jurors similarly. Todd contends that the prosecutor's racially-neutral explanation was pretextual. We do not agree.

There was no discriminatory intent inherent in the prosecutor's explanation, and Todd presented no further argument or proof to persuade the trial court otherwise. Further, we note that there were four black panelists already selected to be on the jury. The presence of minority members on the jury, while by no means determinative of the question of whether discrimination occurred, is of some significance. *Thompson v. State*, 301 Ark. 488, 785 S.W.2d 29 (1990). We hold that the trial court's decision permitting the State to strike Vaughn was not clearly against the preponderance of the evidence.

## C. Denial of Motion to Suppress

Todd filed a motion to suppress incriminatory statements he made during a custodial interview on the basis that they were not voluntary and were made as a result of a false promise of reward or leniency. A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that

11

a custodial statement was given voluntarily and was knowingly and intelligently made. *Montgomery v. State*, 367 Ark. 485, 241 S.W.3d 753 (2006). A statement induced by a false promise of reward or leniency is not a voluntary statement. *Id*. For the statement to be involuntary, the promise must have induced or influenced the confession. *Id*. Furthermore, the defendant must show that the confession was untrue. *Id*. In determining whether there has been a misleading promise of reward or leniency, this court views the totality of the circumstances and examines, first, the officer's statement and, second, the vulnerability of the defendant. *Id*.

At the suppression hearing, Investigator Crane testified that he went over a *Miranda* rights form with Todd. It contained a waiver that provided, "No promises or threats have been used against me to induce me to waive the rights listed above. With full knowledge of my rights, I hereby voluntarily, knowingly, and intelligently waive them, and agree to answer questions." According to Crane, Todd said that he understood his rights, agreed to speak with Crane, and signed the form. Crane testified that they spoke of drug court or "swift court" because Todd brought it up at the interview.

Todd began the interview saying, "I want some rehab, some drug court 'cause I need some help, brother. Penitentiary ain't helping me." Later, the following was said:

TODD: If I'm looking at, as you say, three or four charges, you gonna help me with some drug—You ain't gonna help me on nothing. Can we talk about me getting some Drug Court or whatever the case may be?

CRANE: Mr. Todd, I'm not gonna sit here and lie to you. I don't have a clue. That's not my — I don't work that. I don't work in Drug Court.

. . . .

TODD:          You ain't told me you gonna try to help me or nothing. I done helped you out.

CRANE:         I told you —What did I tell you?

TODD:          But ain't I done helped you?

CRANE:         I told you that was not my line of work. I don't work in Drug Court. I told you what you will have to do is speak to the Judge about that.

Todd testified that, after his arrest in Walmart, he and Crane were walking outside and that "[Crane] started telling me how I'd been through this, here, and maybe I just need some drug court, or something; maybe I need some help." Todd went on to say, "That led me to believe that I was going to go to Drug Court. I asked him could he help me get it and he was, like he was gonna see; he gonna do what he can." Todd testified, "When he said 'See what he can do,' to me, I'm thinking, 'Okay, well, yeah, you fixin' to help me try to get me Drug Court or Swift Court or something.' That is the reason I talked to him." At the conclusion of the hearing, the trial court denied Todd's motion to suppress.

When we review a trial court's ruling on the voluntariness of a confession, we make an independent determination based on the totality of the circumstances and reverse only if the trial court's finding is clearly against the preponderance of the evidence. *Durham v. State*, 320 Ark. 689, 899 S.W.2d 470 (1995). We defer to the superior position of the trial court to evaluate the credibility of witnesses who testify at a suppression hearing. *Montgomery*, *supra*.

On appeal, Todd argues that he gave incriminating statements to Investigator Crane because Crane had led him to believe that he was going to get drug court. He claims that this was a hope for reward in violation of Ark. R. Crim. P. 16.2 and violated his constitutional

rights.

We are not convinced that Crane made any promise of reward or leniency. *See Holley v. State*, 2014 Ark. App. 557, 444 S.W.3d 884 (noting that we do not assess a defendant's vulnerability if we first conclude that no false promise of reward or leniency was made). Crane repeatedly told Todd that he did not work with drug court and thus, it was out of his hands. *See Durham*, *supra* (concluding that, following an officer's example of how appellant could benefit from telling his side of the story, officers repeatedly and clearly stated that they had no power to strike a bargain with appellant and, thus, his confession was voluntary). Crane and Todd had conflicting accounts of what happened, and we defer to the trial court to evaluate the credibility of witnesses. *Montgomery*, *supra*. Viewing the totality of these circumstances, we cannot say that the trial court's decision to deny Todd's motion to suppress was clearly against a preponderance of the evidence.

We do not address Todd's argument that his rights were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as under Arkansas's constitution. He raised only a general assertion in his motion to suppress, did not argue the point to the trial court, and does not elaborate on the alleged violation of his rights on appeal to this court. Appellate courts will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in support, and it is not apparent without further research that the argument is well taken. *Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001).

SLIP OPINION

### D. Admission of Rule 404(b) Evidence

Arkansas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith; however, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Brasuell v. State*, 2015 Ark. App. 559, 472 S.W.3d 499. Such evidence is admissible if it has independent relevance. *Id*. Rule 404(b) evidence of other crimes must be similar to the charged crime; the degree of similarity between the circumstances of prior crimes and the present crime required for admission of evidence under Rule 404(b) is a determination that affords considerable leeway to the trial court and may vary with the purpose for which the evidence is admitted. *Id*. Our supreme court has repeatedly ruled that trial courts have broad discretion in deciding evidentiary issues, including the admissibility of evidence under Rule 404(b), and that those decisions will not be reversed absent an abuse of discretion. *Id*.

According to Todd, admission of the unredacted video confession and testimony about his prior conviction in Howard County was more prejudicial than probative under Ark. R. Evid. 403. Rule 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. Evidence offered by the State in a criminal trial is likely to be prejudicial to the defendant to some degree, otherwise it would not be offered. *Vance v. State*, 2011 Ark. 243, 383 S.W.3d 325. As a preliminary matter, the judge did not allow admission of Todd's

*conviction* in Howard County—only the facts surrounding the investigation and the fact that he subsequently confessed. Of course testimony about the Howard County incident was prejudicial, but its probative value was not substantially outweighed by the danger of unfair prejudice. The testimony about the Howard County incident was independently relevant to show that Todd had established a plan with Featherston to defraud Walmart and was admissible to show knowledge, intent, and absence of mistake. As for the video confession, we note that, although Todd objected to its admission on the basis that "some of it should be redacted," defense counsel said nothing when the trial court declined to admonish the jury to consider only the current crimes. The question of whether the jury should have been admonished came from the prosecutor.

Todd further argues that "the Howard County conviction" was not a part of the same transaction and was therefore inadmissible, relying on *Bell v. State*, 6 Ark. App. 388, 644 S.W.2d 601 (1982). He argues that admission of this evidence led to the jury's convicting him on evidence that had no connection to this case. We disagree. The only requirement is that the other crime be *similar* in nature. Here, shortly after Todd's arrest on the current charges in Hempstead County, an investigation in Howard County revealed a similar plan involving Todd and Featherston stealing checks from vehicles near Hope, using those checks to purchase expensive electronics at Walmart, and returning the items for cash that they would then divide. The crimes were similar—virtually the same method of operation and committed very close in time to each other. The trial court had considerable leeway in deciding whether they were similar enough. We hold that the trial court did not abuse its



discretion in admitting the Rule 404(b) evidence.

Todd also asserts that the Rule 404(b) exception is unconstitutional in that it violates his right to the presumption of innocence and his right to due process. Although Todd raised this contention in a response and objection, he did not pursue the matter or get a ruling at a pretrial hearing and does not expound on this argument on appeal. It is the appellant's burden to present a case before the trial court that fully and completely develops all of the issues. *Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008). Because Todd failed to properly preserve this argument, we do not address it.

### E. Denial of Motion for New Trial

Following the sentencing phase, the jurors were excused and began leaving the courtroom. Defense counsel approached the bench and told the judge that Todd claimed to have seen one of the jurors wink at Ms. McQueen, a prosecutor. The judge asked Ms. McQueen whether she had any connection with the particular juror, and she said that they attended the same church but were not friends. The trial court stated that this connection had been previously disclosed. Defense counsel moved for a new trial based on juror bias, and the trial court denied it.

The decision on whether to grant or deny a motion for new trial lies within the sound discretion of the circuit court. *Holloway v. State*, 363 Ark. 254, 213 S.W.3d 633 (2005). We will reverse a circuit court's order granting or denying a motion for new trial only if there is a manifest abuse of discretion. *Id*. A circuit court's factual determination on a motion for new trial will not be reversed unless clearly erroneous. *Id*.

17

Following allegations of juror misconduct, the moving party bears the burden of proving that a reasonable possibility of prejudice resulted from any such juror misconduct. *Id.* This court will not presume prejudice in such situations. *Id.* Jurors are presumed unbiased and qualified to serve, and the burden is on the appellant to show otherwise. *Id.* Whether prejudice occurred is a matter for the sound discretion of the circuit court. *Id.*

Todd argues that the juror was biased or prejudiced against him in that she winked so "as to indicate that 'we got him.'" Todd claims that the trial court should have, but did not, inquire further.

The only connection shown between the juror and the prosecutor was attendance at the same church. Defense counsel did not dispute that the connection had already been disclosed and, arguably, waived, and he did not otherwise press the matter. Moreover, Todd has not shown that he was prejudiced by the court's action or inaction. We cannot say that the trial court abused its discretion in not ordering a new trial.

### III.   *Conclusion*

We reverse and dismiss Todd's conviction for commercial burglary. Accordingly, his aggregate sentence of seventy-five years should be reduced by thirty years, and the total fine he must pay is reduced to $22,500. We affirm Todd's other convictions and hold that there is no merit in the arguments he raises on appeal.

Affirmed in part; reversed and dismissed in part.

HARRISON and KINARD, JJ., agree.

*Anthony S. Biddle*, for appellant.
*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.